(49 App. Div. 218.)

PEOPLE v. REILLY.

(Supreme Court, Appellate Division, First Department.   March 9, 1900.)

1. BURGLARY—POSSESSION OF BURGLARS' TOOLS.
    Evidence that defendant, when arrested, after resistance, in company with other men, all having in their possession revolvers, drills, caps, jimmies, dynamite sticks, and other tools such as are adapted for use, and commonly used, by burglars; that their movements were suspicious; that after arrest they talked to each other about being "wanted" elsewhere,—is sufficient to sustain a conviction for having burglars' tools in possession.

2. SAME—INTENT.
    That the intention of one charged with having burglars' tools in his possession was to commit a crime in another state is immaterial, if the possession of the tools and the formation of the intention in the state are established.

3. CRIMINAL LAW—TRIAL.
    Reading the indictment to the jury, if in good faith, and for the purpose of stating what the prosecution intended to prove, is not error.

4. SAME—APPEAL.
    It is within the discretion of the court to recall a witness after the closing of a case.

5. INDICTMENT AND INFORMATION—VARIANCE.
    Under section 508 of the Penal Code, providing that one having in his possession any tools or implements adapted or commonly used for the commission of burglary or other crimes, under circumstances evincing an intent to use them in the commission of a crime, shall be guilty of a misdemeanor, and, if he has been previously convicted of any crime, he is guilty of a felony, proof and conviction of a first offense under an indictment charging a prior offense are not such variance as will defeat the judgment of conviction.

Appeal from court of general sessions, New York county.

Thomas Reilly was convicted of having in his possession burglars' tools, and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Thomas A. Atchison, for appellant.
Charles E. Le Barbier, for the People.

O'BRIEN, J. The indictment was for a felony committed by the defendant, in having in his possession on the 11th day of July, 1898 (he previously, in April, 1893, having been convicted of attempt to commit grand larceny), under circumstances evincing an intent to use and employ the same in the commission of a certain crime to the grand jury unknown, three implements of the kind called "drills," three implements of the kind called "caps," one implement of the kind called "jimmies," and one implement of the kind called "dynamite sticks"; the same being implements adapted, designed, and commonly used for the commission of the crimes of burglary and larceny. At the opening the district attorney read the indictment, stating that he intended to prove all the allegations therein, to which reading the defendant's counsel objected and took exception. During the trial the assistant district attorney admitted that he could not establish that the defendant had previously been convicted of larceny, as charged in the indictment; and all testimony with regard to such conviction was stricken out, and a conviction was asked for under section 508 of the Penal Code, as amended by Laws 1884, c. 369, relating to misdemeanor, instead of felony, and which provides as follows:

"A person who makes or mends, or causes to be made or mended, or has in his possession in the day or night time, any engine, machine, tool, false key * * * or implements adapted, designed or commonly used for the commission of burglary, larceny or other crime, under circumstances evincing an intent to use or employ or allow the same to be used or employed, in the commission of a crime, or knowing that the same are intended to be so used, shall be guilty of a misdemeanor, and if he has been previously convicted of any crime, he is guilty of a felony."

Motion was thereupon made to dismiss the indictment upon the ground that the proof varies from the charge, which was denied and exception taken.

Upon the trial, there was adduced for the prosecution the testimony of the two detectives who arrested the defendant and his companions at the West Forty-Second street ferry house on July 11, 1898; and in behalf of the defendant, the testimony of the baggage master and the ticket seller at the ferry house. The detectives stated that they intercepted the defendant and four others at the Forty-Second street ferry, as they were about to take passage to New Jersey, and put them under arrest; that there was a scuffle with some of the prisoners, during which revolvers fell on the floor; that Reilly, who had been in conversation with the others, resisted arrest; that the men were then and there searched, and on Reilly were found "a piece of fuse wrapped up in a white piece of paper, a small jimmy, with the corner broken off, about eleven inches long, and a loaded revolver"; that the jimmy was a burglar's jimmy, not straight, but bent; that on Spencer were found two drills, a jimmy, and a loaded revolver, and that there were tools on every one of them; that the men were put into a patrol wagon, and on the way down, in Reilly's presence, Mason said, "My clothes are all spoiled," and Spencer replied, "There is a lot of people in this country would buy you ten suits of clothes to get you," and then to the officers: "You are two lucky

dogs, that you didn't get us on the outside. If you did, we would mix up with you. * * * If you got looking down the barrel of that gun, there would be trouble." The testimony of the baggage master and the ticket seller in behalf of the defendant, in effect, was that they were near by when the arrest took place, and did not see the men searched, or any tools taken from them; but both admitted that there was a portion of time when they were not present, and when the search might have taken place,—the baggage master going to the telephone, and the ticket seller outside to call a patrol wagon. The latter further testified that he saw a man pick up a bundle of tools under the seat, which he told the man to give to the officers.

After the judge had charged the jury, the defendant's attorney asked that the jury must find these to be burglars' tools. The judge asked if a witness had not so testified, and, being informed that he had not, directed that the witness be recalled. The defendant's attorney then said that the officer had sworn positively that they were not necessarily burglars' tools, and he objected to the recalling of the witness. The officer, on taking the stand again, testified that the tools were burglars' tools. The defendant then asked that the judge charge that there was no proof that the tools found were burglars' tools, and to his refusal took exception. The court did charge, however, that the tools found must be adapted, designed, or commonly used for the commission of burglary, larceny, and other crimes, and also that they must be found under circumstances evincing an intent to use them in the commission of a crime. The defendant then asked that if the jury found that it was the defendant's intention to leave this state, his intention being to commit the crime without its jurisdiction, they must acquit him; but this the judge refused, holding that it was sufficient if the intention was to commit a crime anywhere. The jury returned a verdict of guilty as a first offense, and motion for a new trial was denied. In accordance with the verdict, judgment was duly entered, and the defendant sentenced to imprisonment in the penitentiary for the term of one year.

There was sufficient evidence tending to prove, not only that the defendant had tools such as are adapted for use and commonly used by burglars, but that he was in the company of four other men who were similarly equipped with tools and revolvers, and that their movements were on that day suspicious, and open to the inference that in concert they were preparing for an expedition on burglary intent.

It is urged, however, that the reading of the indictment was error, under People v. Fielding, 158 N. Y. 542, 53 N. E. 497. That case is not in point. The reading was but another way of stating what the district attorney expected to prove, and, there being nothing to show that it was done in bad faith, it is not reversible error.

Of the defendant's guilt of a first offense there can be little doubt. As stated, he was arrested with others only after resistance, and on him, as well as his companions, were found weapons and implements "adapted" to the commission of a crime. These facts, together with the conversation alleged, constituted sufficient circumstances to indicate an intention to commit a crime with the implements found up-

on them. As to this latter point there is no contradiction, for the defendant's witnesses admit that the men could have been searched and the weapons taken from them in the ferry house; and, though tools were picked up by a passenger there and handed to the officers, there is nothing to indicate what tools they were, or who had put them on the floor, so that the officers' version must be accepted as absolutely true. Nor does there seem to be any merit in the contention that the defendant should be acquitted if his intention was to commit a crime without the state, because the crime is complete in this state, if carrying tools and intention formed in this state are established. Nor do we think it was reversible error for the judge to permit the rec  of the officer to testify as to the tools after the case had been closed; that being a subject within the discretion of the trial court, with which this court should not interfere, except it be shown that it was abused or unreasonably exercised, neither of which appears from this record.

Another error assigned by the appellant is the alleged variance between the indictment and the proof. Sections 278 and 279 of the Code of Criminal Procedure provide that the indictment must charge but one crime, and in one form, except that the crime may be charged in separate counts to have been committed in a different manner or by different means, and that, where the acts complained of constitute different crimes, such crimes may be charged in separate counts. The indictment here, drawn under sections 508 and 688 of the Penal Code, after setting forth that Thomas Reilly had been guilty of an attempt to commit the crime of grand larceny in the first degree, of which crime he was convicted, then proceeds to charge that he "having been so as aforesaid convicted of the said crime, * * * feloniously did have in his possession, under circumstances evincing an intention to use and employ the same * * * in the commission of a certain crime, to the grand jury aforesaid unknown, * * *" certain implements used for the commission of the crime of burglary and larceny. There is no doubt that this indictment was directed to placing the defendant on trial for carrying burglars' tools as for a second offense, and that there was a failure to prove this latter part of the indictment. We do not think, however, that this is fatal to the judgment; the crime for which the defendant was indicted and that for which he was tried and convicted being the same crime. The additional charge that he had been guilty of a former crime, if proved, would have added to his punishment, by making him guilty of a felony instead of a misdemeanor. He was indicted for but one crime, the question of a second offense going simply to the extent of his punishment; the crime being one specially guarded against by section 508 of the Penal Code, to which we have already referred, and which provides for the punishment as for a misdemeanor of one who has in his possession burglars' tools, and, if he has been previously convicted of any crime, for punishment as for a felony. The indictment is for but one crime, but, to determine its grade, it is competent to prove, when charged, as here, that the defendant has been guilty of a previous offense. Thus, the Penal Code (sections 5 and 6) defines a felony as "a crime which is or may be punishable by

either, (1) death; or, (2) imprisonment in a state prison"; and a misdemeanor as "any other crime." At common law, a felony, in the general acceptation of the criminal law, comprised every species of crime which occasioned the forfeiture of either lands or goods or both, and to which capital or other punishment might be added, according to the degree of guilt. 1 Colby, Cr. Law, p. 481. The extent of punishment, therefore, has always defined a felony. In the present instance the criminal act for which the defendant was indicted was the having possession of burglars' tools with intent to commit a crime. But the extent to which punishment should be meted out upon conviction was determinable by whether or not the defendant had been guilty of a former crime; and this, if charged and proved, would change the punishment to be inflicted from that as for a misdemeanor to punishment as for a felony. Inability, therefore, to prove such former conviction, does not deprive the trial court of the right to proceed to try the question of the prisoner's guilt for the very crime for which he was indicted; nor in this is there any variance or inconsistency.

For the reasons given, we think that the judgment of conviction should be affirmed. All concur.