UNITED STATES ex rel. MYLIUS v. UHL, Acting Immigration Com'r.

(District Court, S. D. New York. February 19, 1913.)

1. ALIENS (§ 44*)—RIGHT TO ENTER—ACTS OF IMMIGRATION AUTHORITIES.

In determining whether aliens are entitled to admission, the immigration authorities act in an administrative and not in a judicial capacity, and must follow definite standards and apply general rules.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 102–104; Dec. Dig. § 44.*]

2. ALIENS (§ 47*)—RIGHT TO ENTER—OFFENSES INVOLVING MORAL TURPITUDE.

Immigration authorities, in determining whether an offense, of which an alien applying to enter the United States has been convicted, involves moral turpitude, must be governed by a determination of the question whether the inherent nature of the particular offense includes it; the authorities having no jurisdiction to go behind judgments of conviction and determine whether the acts disclosed by the testimony indicate personal depravity and moral turpitude.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 106; Dec. Dig. § 47.*]

3. ALIENS (§ 47*)—RIGHT TO ENTER—PREVIOUS CONVICTION OF OFFENSE—CRIMINAL LIBEL—"MORAL TURPITUDE."

Criminal libel of which an alien seeking to enter the United States had been convicted in England for publishing defamatory statements regarding His Majesty the King, being a misdemeanor at common law and as defined by Lord Campbell's Libel Act, under which he was convicted (6 & 7 Vict. c. 96), was not an offense involving moral turpitude for which petitioner could be lawfully excluded; the term "moral turpitude," as so used, meaning an act of baseness, vileness, or depravity, in the private and social duties which a man owes to his fellow man or to society, and as applied to offenses includes only such crimes as manifest on the part of the perpetrator personal depravity or baseness.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 106; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 5, pp. 4580, 4581.]

Habeas corpus by the United States, on relation of Edward F. Mylius, to obtain his discharge from the custody of Byron H. Uhl, Acting Commissioner of Immigration. Writ granted.

Simon O. Pollock, of New York City, for relator.
Henry A. Wise, of New York City, U. S. Atty., for respondent.

NOYES, Circuit Judge. Congress has not declared in general terms that all immigrants who have been convicted of crime shall be denied admission to the United States. The immigration laws divide offenses. They provide that aliens shall be excluded in case they have been

convicted of crimes involving moral turpitude. The inquiry is twofold: (1) Is the conviction of crime established? (2) Is the crime one which involves moral turpitude?

[1, 2] In determining whether aliens are entitled to admission, the immigration authorities act in an administrative and not in a judicial capacity. They must follow definite standards and apply general rules. Consequently, in classifying offenses I think that they must designate as crimes involving moral turpitude those which in their inherent nature include it. Their function is not, as it seems to me, to go behind judgments of conviction and determine with respect to the acts disclosed by the testimony the questions of purpose, motive and knowledge which are often determinative of the moral character of acts. Besides, the testimony is seldom available and to consider it in one case and not in another is to depart from uniformity of treatment. In my opinion when it has been shown that an immigrant has been convicted of a crime, the only duty of the administrative officials is to determine whether that crime should be classified as one involving moral turpitude, according to its nature and not according to the particular facts and circumstances accompanying a commission of it: I do not think the immigration law intends that where two aliens are shown to have been convicted of the same kind of crime, the authorities should inquire into the evidence upon which they were convicted and admit the one and exclude the other. It is true that if they do not take such course some aliens who have been convicted of high crimes may be excluded although their particular acts evidence no immorality and that some who have been convicted of slight offenses may be admitted although the facts surrounding their commission may be such as to indicate moral obliquity. But such results always follow the use of fixed standards and such standards are, in my opinion, necessary for the efficient administration of the immigration laws.

[3] This petitioner is an alien seeking admission to this country and it was established before the immigration officials that he had been convicted in England of the offense of criminal libel in that he had published defamatory statements regarding His Majesty the King. The officials went further, examined the report of the proceedings at the trial and determined therefrom that the acts of the petitioner involved moral turpitude. Thereupon they found that he had been convicted of a crime embracing it and ordered his exclusion.

For the reasons stated I shall not, in reviewing the action of the executive officers, follow them into a discussion of the proceedings before judgment in the English court. It is proper, therefore, to emphasize that no conclusion which I may reach in interpreting these immigration statutes can be regarded as in the slightest degree minimizing the serious character of the petitioner's acts as disclosed, nor as reflecting in any way upon the fairness and regularity of his trial. If the petitioner be discharged it will be solely because I regard the offense of criminal libel as not involving in its inherent nature moral turpitude.

What, then, is the crime of criminal libel and what is moral turpitude?

To maliciously publish defamatory words of a person was a misdemeanor at common law. To "maliciously publish any defamatory libel" is the provision of Lord Campbell's Libel Act under which the petitioner was convicted (6 & 7 Vict. c. 96). The statute adds nothing to the common law definition and the definition establishes little concerning the moral character of the offense until we ascertain what the elements really mean and imply.[1]

"Moral turpitude" is a vague term. Its meaning depends to some extend upon the state of public morals. A definition sufficiently accurate for this case, however, is this:

"An act of baseness, vileness, or depravity, in the private and social duties which a man owes to his fellow man or to society." 20 Am. & Eng. Ency. of L. 872.

And, adapting this, we may say that a crime involves moral turpitude when its nature is such that it manifests upon the part of its perpetrator personal depravity or baseness.

We come then to the fundamental inquiry: Does the crime of criminal libel in its nature imply personal depravity or baseness upon the part of its perpetrator? In my opinion the answer to this question depends upon that which must be shown to establish his guilt. Undoubtedly there may be cases in which the facts will show upon the part of the libeler a malignity of purpose and depravity of disposition conclusively indicating moral turpitude. But if it be unnecessary to establish such purpose or disposition to make out the crime of criminal libel, it cannot be said in its nature to involve them or the conclusion to be drawn from them. If only the persons who publish false and defamatory libels with intent to injure were criminally liable for them, there would be no difficulty in finding moral turpitude in the offense. The evil intent would enter into it. But the law of libel, for the protection of society, goes far beyond this. Editors and publishers have in the past been held criminally responsible for the publication of libels wholly without their knowledge. In such cases a finding of guilt does not establish moral depravity. And now in England and in this country the same liability exists if the libel came into the newspaper through their want of care. But here the basis of liability is really one of negligence and does not in itself show moral baseness. Corporations are convicted of criminal libel but their guilt hardly implies their moral obliquity. So a mistake of facts or innocent intention does not excuse; malice does not imply personal ill will and the truth cannot be shown to exculpate unless—according to the English law—it appear that the public interests required the publication. Upon such requirements of proof it seems manifest that a conviction of libel establishes little concerning the moral status of the person convicted.

All this, however, does not tend to minimize the serious character of criminal libels. The very grievousness of the wrongs they inflict

[1] Another English statute provides that if any person shall publish a defamatory libel "knowing the same to be false" he shall be liable to a heavy punishment. This statute by making guilty knowledge an element may state an offense which upon its face involves moral turpitude but as the petitioner was not convicted under it, it is unnecessary to consider it.

and the difficulty of reaching responsible persons forces the imputation of responsibility. The well-being of society requires that persons only indirectly responsible should be held liable and that few obstacles should stand in the way of establishing their guilt. But every step in the direction of widening the scope of the law of libel and of eliminating defenses of the want of personal participation is a step away from establishing the crime as one involving personal baseness or depravity.

Upon the whole I am compelled to the conclusion that the offense of criminal libel does not in its inherent nature involve moral turpitude and that in classifying it under the immigration laws, it must be designated as one which does not possess that element.[2] It follows, therefore, that the petitioner does not belong to the excluded classes, and that he should be released from custody and admitted to the United States; and it is so ordered.

---

[2] I do not question the correctness of the decisions like Ex parte Mason, 29 Or. 18, 43 Pac. 651, 54 Am. St. Rep. 772, that, in certain judicial causes, the willful publication of a malicious libel should be held to involve moral turpitude. In such causes there are judicial inquiries as to particular acts. In the present case, as pointed out in the opinion, the purpose is to state general rules to be followed in immigration cases where the inquiry is nonjudicial.

