## UNITED STATES ex rel. MONGIOVI v. KARNUTH, District Director of Immigration.

District Court, W. D. New York. February 21, 1929.

Christy A. Buscaglia, of Buffalo, N. Y., for plaintiff.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Richard A. Grimm, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. The relator, Calogero Mongiovi, was born in Italy and entered the United States in August, 1913. After remaining two years, he returned to his native land, and subsequently, on December 25, 1919, he again came to this country, entering at the port of New York. In November, 1923, following his apprehension at New York City, he pleaded guilty to an indictment for manslaughter second degree, and was sentenced to Auburn State Prison for a term of not less than 6 years 6 months, and not more than 15 years. On November 7, 1924, the Department of Labor charged the relator, who was then in prison, with having been found in the United States in violation of Immigration Act of February 5, 1917 (39 Stat. 874), asserting that he had been convicted of a crime involving moral turpitude, to wit, manslaughter in the second degree, committed within 5 years after his entry, and, after a hearing, a warrant was issued directing his deportation to Italy.

It is now contended in his behalf that manslaughter in the second degree is not a crime involving moral turpitude, and therefore his deportation is illegal. Moral turpitude is defined as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society." The intentional slaying of a human being, even though committed without malice, and manslaughter in the first degree, which apparently includes intent and

willfulness, would therefore be offenses involving moral turpitude.

 This court is without power to examine into the evidence upon which the conviction or the relator's plea of guilty of manslaughter in the second degree was based (U. S., etc., v. Uhl (D. C.) 203 F. 152), and accordingly resort must be had to the statutes of the state of New York to define the particular character of the crime. Section 1052 of the Penal Law of New York defines manslaughter in the second degree as a crime committed without design to effect death:

"1. By a person committing or attempting to commit a trespass, or other invasion of a private right, either of the person killed, or of another, not amounting to a crime; or

"2. In the heat of passion, but not by a dangerous weapon or by the use of means either cruel or unusual; or

"3. By any act, procurement or culpable negligence of any person, which, according to the provisions of this article, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

As defined, manslaughter, in the second degree does not include an evil intent or commission of the act willfully or designedly, and it expressly includes an act resulting in death without design to injure or effect death. These quoted subdivisions cover the involuntary manslaughter of the common law, which likewise is committed without contemplating death, without malice, and without intent, and ordinarily committed while engaged in a lawful act, through carelessness, or because of the absence of due caution or circumspection.

The Solicitor of the Department of Justice, not long since, in a definition of crimes involving moral turpitude for the information of immigration officers, specified a number of offenses which, in his judgment, involved moral turpitude, and excepted offenses which were "the outcome merely of natural passion, of animal spirits, of infirmity of temper, of weakness of character, or of mistaken principles, unaccompanied by a vicious motive or corrupt mind." Although this general summary is vague and indefinite, yet I think that the commission of manslaughter in the second degree is "unaccompanied by a vicious motive or corrupt mind."

The instant case is quite different from Weedin v. Yamada (C. C. A.) 4 F.(2d) 455, and U. S. ex rel. Morlacci v. Smith, etc., 8 F.(2d) 663, decided by this court, wherein it was ruled that, as the crime of assault with a deadly weapon, as defined in the respective state statutes, was committed with an intent to do bodily harm, the offense involved moral turpitude. The deportation of the relator would involve great hardship, inasmuch as he has lived in this country for the past 10 years, and has dependent upon him, especially since his parole, his wife and two children born in Italy. If his testimony before the inspector is reliable, he has never been arrested or convicted of a crime, committed either in Italy or in this country, except the crime for which he was sentenced as herein stated. In an affidavit filed in this proceeding, he deposed that it was his daughter who accidentally suffered death at his hands in the course of a quarrel between him and his wife, wherein there was a struggle for possession of a pistol, which, during the struggle, was accidentally discharged. However, as heretofore pointed out, going beyond the record of conviction to ascertain the facts is not required, since the question of moral turpitude must be determined, as Judge Noyes said, in U. S., etc., v. Uhl, supra, "according to its nature and not according to the facts and particular circumstances accompanying the commission of it."

So considered, the writ of habeas corpus, in my opinion, must be sustained, and the relator discharged from custody. So ordered.