THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES BELLUCCI and Another, Defendants.

City Magistrates' Court, City of New York, Borough of Brooklyn, Fifth District, March 21, 1930.

George E. Brower, District Attorney [Nicholas G. Psaki, Deputy Assistant District Attorney], for the plaintiff.

Robert S. DuBois, for the defendants.

RUDICH, J. The defendants are charged with the possession of a loaded revolver without a permit, in violation of section 1897 of the Penal Law; and since each of the defendants has been previously convicted of a crime, this charge is made a felony instead of a misdemeanor. The weapon was found covered by a piece of imitation grass on a shelf or ledge near the cash register and behind the cigar counter of a restaurant owned jointly by the defendants. The restaurant occupied a one-story building; the front part was a store where the tables were located, while the rear room was used as a kitchen. When the revolver was found, the defendant Bellucci was in the store, while the defendant Esposito was in the rear room, the door between the two rooms being open.

At the close of the People's case the defendants moved to dismiss this proceeding on the ground that there was no proof of possession of the weapon by either defendant, and that in any event as against the defendant Esposito, who was in the rear room when the revolver was discovered, this proceeding must fail.

This motion raises questions of law which have been passed upon recently by higher courts, though not on the precise state of facts here presented. While the statute itself does not undertake to define what is meant by "possession," it is now well settled that actual physical hold of the weapon need not be proven to establish the crime; that constructive possession, as in one's home, may be sufficient. (People ex rel. Darling v. Warden, etc., 154 App. Div. 413.) In that case the weapon was found in a cabinet in the defendant's bedroom when the defendant was present; there was no doubt that it was his room and that he was the sole occupant. There the answer was as simple as the facts.

However, more difficult questions arise when, as here, a weapon is found in a place belonging to or occupied by more than one person. It is in this class of cases that defendants challenge the State to fasten criminal responsibility, with definite certainty, upon any one. In *People* v. *Andreacchi* (221 App. Div. 136) the trial court charged that the jury could find that the defendant was in constructive possession of any one of three revolvers found on the floor of a taxicab which he had just entered, and in which two other men were already seated. The Appellate Division in the First Department, by a vote of three to two, reversed the conviction and discharged the defendants, saying: " There is some doubt as to whether the defendant had actually seated himself in the taxicab. We do not think that he had been in it for such an appreciable length of time as would justify an inference that he had knowledge of the presence of the weapons."

The court distinguished this case from its earlier, and unanimous, decision in *People* v. *Amberg* (216 App. Div. 791, without opinion), by stating that in the *Amberg* case " the defendant had been in the taxicab for an appreciable length of time."

The ruling in the *Andreacchi* case in preference to that in the *Amberg* case was followed by Mr. Justice LEWIS sitting at Special Term in Kings county, in the case of *People ex rel. De Feo* v. *Warden, etc.* (136 Misc. 836). There a single revolver was found underneath the front seat of an automobile; the three defendants were seated in the rear of the vehicle. The learned court reluctantly discharged the defendants on a writ of habeas corpus, stating that there was no presumption of ownership or possession in any of the three men, but he called the attention of the Legislature to the need of plugging up this loophole of escape by appropriate amendment to the Penal Law.

In *People* v. *Birnbaum* (208 App. Div. 476, 477) the charge was that of possessing burglars' tools. The two defendants and a third person had hired a furnished room and were known to sleep there at times. After the decease of the third man the tools were found in the room during the absence of both defendants. One came in while the police were still there and the other later presented himself at the police station. Each disclaimed knowledge of the presence of the implements but the jury nevertheless decided against them. The Appellate Division in the First Department unanimously sustained the conviction, saying: " The room was so furnished, too, that three persons might sleep there; and it was inferable from the fact of their occasional attendance there, the accommodations for sleeping there on occasions, that the three persons were acting in concert in possession of the room, and

inferentially that they had joint possession of the contents. If tools are deposited in some place mutually agreed upon by implication from the facts, and to which any number of persons acting in concert could resort at pleasure, there circumstances would be sufficient for the finding that all participating in the arrangement had a constructive possession of the tools."

The Court of Appeals, in *People* v. *Persce* (204 N. Y. 397), has defined the word "possession" in this section of the Penal Law as meaning "that which places the weapon within the immediate control and reach of the accused for unlawful use if he so desires," as distinguished from a possession "such as would theoretically and technically follow from the legal ownership of a weapon in a collection of curious and interesting objects."

To my notion, the rulings in the *Andreacchi* case and in the *DeFeo* case should be limited to situations precisely similar to the facts there disclosed and should not be extended to the case of weapons found in a room rented and occupied jointly by two or more persons. Since prevention is more desirable than arrest after the crime, are the police to wait on the outside of premises known to contain loaded revolvers belonging to those inside, until one occupant remains, in order to charge some one with possession of the weapons? With crime so rampant and the unlawful use of revolvers so common, are all the inmates to go free because the police cannot, with absolute certainty, allocate every firearm found there to its respective owner? Along with general principles of law as deduced from previous decisions, each particular state of facts must be judged in the light of experience and reason. Revolvers do not grow wild, like mushrooms. In the case at bar, somebody placed that revolver on a window ledge behind the cigar counter and near the cash register. Any one *might* have done so, but logic based on ordinary human experience tells us that it was placed there by some one who had free and ready access to that spot. May not a jury be justified in finding that these defendants, who had occasion to go there every few minutes in the day to receive payment for food or to vend cigars, were the men who deposited that weapon there? If we permit ourselves to indulge in fanciful suppositions and conjectures, we may say that this revolver *might* have belonged to *any one*, but as a practical matter reasonable men would be justified in believing that it was owned by the same persons who owned the counter, the cigars and the cash register.

We then come to the test laid down by the Court of Appeals in *People* v. *Persce* (*supra*), was this revolver available for use by those in whose premises it was found? If either of these defendants,

by taking a few steps, could have put his hands on this implement then both should be charged, presumptively at least, with knowledge that it was there for them to use — in other words, that their possession was " a knowing and voluntary one " as the Court of Appeals stated in the same case. That presumption is a natural one; it arises from facts and circumstances that appear in the case; it is not strained, nor is it forced by considerations of policy, by which courts should not be swayed. That being so, to ask that the defendants rebut a presumption that arises so naturally from established facts is not calling upon them to prove their innocence. Of course, it is possible that one or even both of these defendants did not know of the existence of this revolver; if that be the defense, their credibility is a matter for the jury to pass upon. But to dismiss this proceeding at its very inception, to declare that men, though with unsavory records, may not even be brought to trial because of the presence of more than one person when the weapon was discovered, would go a long way toward nullifying the salutary features of this statute. By indulging in a process of legal refinement of that sort we may easily effect the complete emasculation of a wholly beneficent law.

Hypothetical and imaginary sets of facts may be conjured where the application of this reasoning might subject an innocent person to the vicissitudes of a trial before a jury. Violent extravagances, however, should give us little concern, for courts and juries may be safely trusted to apply common sense to concrete situations as and when they come up for decision. In the particular case before me, I cannot distinguish this state of facts from that which was presented to the court in the *Birnbaum Case (supra)*, and so both on authority and on principle there is ample justification for holding these defendants for the action of the grand jury.