**UNITED STATES ex rel. GUARINO v. UHL, District Director.**

District Court, S. D. New York.
March 15, 1939.

Gregory F. Noonan, U. S. Atty., of New York City (Clifford H. Rich, Asst. U. S. Atty., of New York City, of counsel), for respondent.

Milton J. Meltzer, of New York City, for relator.

LEIBELL, District Judge.

The relator, Alphonse Guarino, is a native and subject of Italy. He was legally admitted to the United States May 2, 1915, and has never departed therefrom. At no time did he become an American citizen. On January 9, 1925, when seventeen years old, he pleaded guilty in the Court of General Sessions to the misdemeanor of unlawfully possessing burglar's tools, a "jimmy". On January 16, 1925, he was sentenced to the New York City Reformatory of Misdemeanants for an indeterminate period. On October 19, 1936, he pleaded guilty in the United States District Court for the Eastern District of New York to an indictment containing four counts, charging him with possessing and passing counterfeit Federal Reserve Bank Notes. He was sentenced to three years in the Penitentiary on each count, to run concurrently.

While incarcerated in the United States Penitentiary Annex at Fort Leavenworth, Kansas, the alien was examined and accorded a hearing on December 30, 1937. He admitted he was the person charged in both the above described indictments. It was recommended that he be deported, having been convicted more than once for

136

a crime involving moral turpitude and having been sentenced on each occasion to imprisonment for a term of one year or more. This recommendation was approved by the Board of Review; was reconsidered and confirmed; and a warrant of deportation has been issued. The alien had a full and fair hearing. There are no issues of fact involved. The questions raised by the writ of habeas corpus are questions of law.

The warrant of deportation was issued pursuant to Title 8, Section 155, United States Code, 8 U.S.C.A. § 155, which provides: " * * * except as hereinafter provided, any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * *"

Possessing and passing counterfeit obligations of the United States, knowing them to be counterfeit, is a crime involving moral turpitude. U. S. ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298; U. S. ex rel. Allessio v. Day, 2 Cir., 42 F.2d 217. For that crime the relator was sentenced to three years in the Penitentiary by Judge Campbell in the Eastern District on October 19, 1936.

The indeterminate sentence to the New York City Reformatory of Misdemeanants, received by relator in the Court of General Sessions on January 16, 1925, was a sentence to a term of imprisonment for more than one year. United States ex rel. Popoff v. Reimer, 2 Cir., 79 F.2d 513, 514; U. S. ex rel. Sirtie v. Commissioner, D.C., 6 F.2d 233, 234.

Relator contends that the misdemeanor to which he pleaded guilty in the Court of General Sessions, unlawfully possessing burglars' tools, a "jimmy", is not a crime involving moral turpitude. There remains to be considered the nature of the crime of unlawfully possessing burglars' tools and the facts charged in the indictment to which relator pleaded guilty in the Court of General Sessions.

"Neither the immigration officials nor the court reviewing their decision may go outside the record of conviction to determine whether in this particular instance the alien's conduct was immoral. And by the record of conviction we mean the charge (indictment), plea, verdict, and sentence." Quoted from U. S. ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757, 759.

The return to the writ of habeas corpus contains a certified copy of the indictment and the sentence, in the Court of General Sessions.

The indictment reads as follows:

"The grand jury of the county of New York, by this indictment, accuse the said defendant of the Crime of feloniously possessing burglars' instruments, after having been convicted of a crime, committed as follows:

"The said defendant, in the County of New York aforesaid, on the 9th day of December, one thousand nine hundred twenty four feloniously did have in his possession in the day time of the said day, under circumstances evincing an intent to use and employ the same, and to allow the same to be used and employed, in the commission of some crime to the Grand Jury aforesaid unknown, one jimmy, the same being adapted, designed and commonly used for the commission of the crimes of burglary and larceny; and the grand jury aforesaid further aver that, prior to the said 9th day of December one thousand nine hundred twenty four to wit, at the United States District Court, Southern District of New York holden in and for Southern District of New York, at the Federal Post Office Building in the Borough of Manhattan of the City of New York, on the 28th day of June one thousand nine hundred twenty three, before the Honorable Augustus N. Hand, judge of the said last named court, the said defendant by the name and description of Alphonse Gunrini was in due form of law convicted of a crime, to wit, unlawfully, wilfully and knowingly selling heroin and cocaine upon a certain Indictment then and there, in the said last-named Court duly pending against him, the said defendant against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity."

The sentence of the Court of General Sessions, imposed January 16, 1925, reads as follows:

"The Court being satisfied by proper evidence that the said Fred Grini, alias Alphonse Gunrini is 17 years of age;

"It is thereupon ordered and adjudged by the Court, that the said Fred Grini, alias Alphonse Gunrini for the misdemeanor aforesaid, whereof ʻhe is convicted, be sent to the New York City Reformatory of Misdemeanants, there to be dealt with according to law."

The statute under which the relator was thus indicted and sentenced is Section 408 of the New York Penal Law, Consol.Laws, c. 40, which provides: "A person who‧ * * * has in his possession in the day or night time, any engine, machine, tool, false key, pick-lock, bit, nippers or implements adapted, designed or commonly used for the commission of burglary, larceny or other crime, under circumstances evincing an intent to use or employ, or allow the same to be used or employed, in the commission of a crime, or knowing that the same are intended to be so used, shall be guilty of a misdemeanor, and if he has been previously convicted of any crime, he is guilty of a felony."

This section of the New York Penal Law (formerly section 508) has remained unchanged in its wording since 1884.

 The indictment in the Court of General Sessions charged a felony. The relator pleaded guilty to a misdemeanor. This involved no change in the nature of the offense, but only in the punishment. People v. Reilly, 49 App.Div. 218, 222, 63 N.Y.S. 18. I am of the opinion that the crime to which relator thus pleaded guilty involved moral turpitude.

In discussing the elements of the offense defined in § 408 of the Penal Law, the Appellate Division, First Department, in People v. Birnbaum, 208 App.Div. 476, 479, 203 N.Y.S. 697, 699, stated: "The statute indicates three distinct elements as necessary to constitute a crime—that is: (1) Possession of tools. If defendants were in common possession of the room, under the proof it could be found they were in common possession of the tools. (2) The tools must be adapted, designed, or commonly used for the commission of burglary. The nature of the implements themselves is sufficient for a jury finding that they were so adapted and designed. (3) The possession must be under circumstances evincing an intent to use or employ the tools or allow the same to be used or employed in the commission of a crime, or there must be knowledge that the implements are intended to be used for a criminal purpose. These elements, of course, are matters for deduction of intent. An intent to use these instruments for the commission of a crime must first be deduced from the nature of the implements themselves, a jimmy, a flash light, a brace and bit, and their possession by two persons in a furnished room apart from their own home." ‧

That a "jimmy" is a burglar's tool commonly so used has been recognized by the courts in New York in cases arising under § 408 (formerly 508) of the Penal Law. See People v. Reilly, supra, and People v. Birnbaum, supra. Also People v. Thompson, 33 App.Div. 177, page 179, 53 N.Y.S. 497, page 499, from which the following is quoted: "It is not disputed but that the question whether the prisoner had or had not in his possession a ʻjimmy,' concededly a tool or implement commonly used for the commission of burglary, was, upon the evidence, properly submitted to the jury; but it is contended that the evidence did not tend to show that it was in his possession ʻunder circumstances evincing an intent to use or employ' it ʻin the commission of a crime.'"

In relator's case he pleaded guilty to unlawfully possessing a jimmy "the same being adapted, designed and commonly used for the commission of the crimes of burglary and larceny" and to having it in his possession "under circumstances‿ evincing an intent to use and employ the same in the commission of some crime to the Grand Jury aforesaid unknown". The criminal intent admitted by the plea related to a crime for which the burglars' tools, the jimmy, would be adapted and commonly used, burglary or larceny, as stated in the indictment. Both those crimes involve moral turpitude. Even an unsuccessful attempt to commit larceny has been held to constitute a crime involving moral turpitude. United States ex rel. Meyer v. Day, 2 Cir., 54 F.2d 336. Attempted burglary would involve moral turpitude. Possessing a burglar's tool, with the intent to use it in the commission of‧ a crime, likewise involves moral turpitude. It is "an act of baseness, villany, or depravity in the private social duties which a man owes to his fellow man or to society in general, contrary to the accepted and customary rule of right and duty between man and man." See Ex parte Tsunetaro Machida, D.C., 277.

F. 239, 241; U. S. ex rel. Mylius v. Uhl, D.C., 203 F. 152, 154; Coykendall v. Skrmetta, 5 Cir., 22 F.2d 120; Ng Sui Wing v. United States, 7 Cir., 46 F.2d 755, 756.

The writ of habeas corpus sued out by relator is dismissed. Relator is remanded to the custody of the Commissioner of Immigration and Naturalization at Ellis Island, New York. Submit order on notice.