MATTER OF GANTUS-BOBADILLA

In Deportation Proceedings

A-19380474

*Decided by Board November 5, 1971*

Respondent, whose conviction of an offense resulted only in a sentence to a period of probation, is not, as a matter of law, precluded by the provisions of section 101(f)(7) of the Immigration and Nationality Act from a showing of good moral character for the purpose of establishing statutory eligibility for voluntary departure under section 244(e) of the Act merely because he is on probation during the requisite statutory period.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer.

ON BEHALF OF RESPONDENT:
Esther Kaufman, Esquire
1823 "L" Street, N.W., Suite 102
Washington, D.C. 20036
(Brief filed)

Antonio C. Martinez, Esquire
77 Seventh Avenue
New York, New York 10011

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The special inquiry officer, in his decision dated January 25, 1971, found the respondent deportable under the charge set forth in the order to show cause and denied him the privilege of voluntary departure. The respondent does not appeal the finding of deportability, but challenges only the denial of the privilege of voluntary departure. The appeal will be sustained and the respondent will be granted the privilege of voluntary departure.

The record relates to a 23-year-old married male alien, a native and citizen of the Dominican Republic. He entered the United States on or about June 3, 1967 as a temporary visitor authorized to remain until June 30, 1967, but remained longer. We agree with the special inquiry officer that deportability has been established by evidence that is clear, convincing and unequivocal.

Section 244(e) of the Immigration and Nationality Act states that the Attorney General may, in his discretion, permit any alien under deportation proceedings (with certain exceptions not relevant to this case) "to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure."

The only evidence in the administrative record which might reflect unfavorably upon the respondent's good moral character is a record of his conviction in the Supreme Court of New York, Bronx County, on October 16, 1970, upon a plea of guilty, to the crime of manslaughter in the second degree. This was evidently under section 125.15(1), Penal Laws of New York, which provides that a person who recklessly causes the death of another is guilty of manslaughter in the second degree. The respondent was sentenced to probation for five years.

The special inquiry officer held that the offense does not involve moral turpitude. We agree, inasmuch as we have held that a predecessor to section 125.15(1) did not involve moral turpitude, *Matter of E—*, 2 I. & N. Dec. 134 (BIA, 1944; A.G., 1944), at page 141. See *Mongiovi v. Karnuth*, 30 F.2d 825 (W.D. N.Y., 1929). Since moral turpitude is not present, the respondent does not come within the purview of section 101(f)(3) of the Act, which bars a finding of good moral character on the part of aliens described in section 212(a)(9) of the Act, *i.e.*, those who have been convicted of a crime involving moral turpitude.

The special inquiry officer held that since the respondent was on probation, and for that reason alone, he was ineligible for voluntary departure, on the theory that a person so restricted is not able to establish good moral character. The special inquiry officer, reluctantly, as he said, denied voluntary departure.

The issue on this appeal, then, is whether the respondent is, as a matter of law, precluded from a finding that he is a person of good moral character merely because he is on probation.

Prior to the enactment of the Immigration and Nationality Act of 1952, there was no statutory definition of, or limitation on a finding of, good moral character. The determination was made on the facts of each case, based upon the alien's conduct during the period prescribed by statute. The standard applied was that of the average person in the community. A single lapse did not necessarily bar a finding of good moral character, nor did conviction of a crime not involving moral turpitude, *Matter of T—*, 1 I. & N.

Dec. 158 (BIA, 1941) ; *Matter of B—*, 1 I. & N. Dec. 611 (BIA, 1943).

Although we are aware of no case concerning the question whether good moral character can be found during a period of probation, there are decisions dealing with good moral character while on parole. The cases are not in agreement.

For example, the court in *In re McNeil*, 14 F. Supp. 394 (N.D. Cal., 1936), a naturalization case, accepted the Government's position that "good moral character contemplated by the naturalization law can only be established by an applicant for citizenship during such period as the applicant is a free moral agent with the same liberties and the same limitations which are the common lot of other residents." However, the same court in a later case permitted a finding of good moral character in the case of an alien who had been convicted of a felony, placed on probation, and whose probation had been discharged under California procedure. *In re Paoli*, 49 F. Supp. 128 (N.D. Cal., 1943).

Other cases took a different approach and followed the holding in *Daddona v. United States*, 170 F.2d 964 (2 Cir., 1948), cert. denied 336 U.S. 961 (1949). That was a naturalization case concerning an alien who had been incarcerated, paroled, and later pardoned. The court took into account evidence of good behavior even during incarceration, saying: "The fact that the applicant has been imprisoned during a large part of the five-year period immediately preceding the filing of his petition is a factor to be considered in determining whether he has established good moral character but it is not decisive as a matter of law. Good moral character for the prescribed period is a question of fact." See also *Petition of Sperduti*, 81 F. Supp. 833 (W.D. Pa., 1949). The *Daddona* approach was followed in *Petition of Willis*, 100 F. Supp. 337 (E.D. Va., 1951), even though there had been no pardon granted.

The intent of Congress with respect to certain aspects of the concept of good moral character was expressed for the first time in the Immigration and Nationality Act of 1952. Section 101(f) lists certain offenses and activities, the presence of which rule out a finding of good moral character as a matter of law. Section 101(f)(7) bars a finding of good moral character during the statutory period with regard to "one who during such period has been confined as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, re-

gardless of whether the offense, or offenses, for which he had been confined were committed within or without such period."

In the present case the offense was committed on or about December 14, 1969. The respondent's conviction was on October 16, 1970, and his five-year probationary period began on that date. On January 25, 1971, when the special inquiry officer entered his order, the respondent had been on probation for slightly more than three months out of the five-year period immediately preceding his application for voluntary departure. The respondent still had over four years and eight months of probation ahead of him. The special inquiry officer concluded that, "He is not now and will not be for a considerable period of time a free agent," and "I hold that I cannot in this posture of his life hold that he is able to establish the requisite good moral character . . ." We do not agree with this conclusion.

Section 101(f)(7) of the Act, as a matter of law, bars a finding of good moral character where there has been actual confinement for a period of one hundred and eighty days. By implication, confinement for a lesser period would not, as a matter of law, bar a finding of good moral character. We believe that, absent a clearly expressed intention of Congress to the contrary, we may not engraft an additional limitation on to section 101(f)(7) by barring a finding of good moral character where there has been only a sentence to a period of probation with no incarceration. Accordingly, we hold that the respondent is not ineligible, as a matter of law, for a finding of good moral character. We wish to emphasize, however, that the absence of such preclusion does not compel a finding of good moral character; under the final portion of section 101(f) the fact that a person is not barred under any of the enumerated subsections of section 101(f) does not preclude a finding that he is not of good moral character, *Matter of Turcotte*, 12 I. & N. Dec. 206 (BIA, 1967).

It is clear from the reading of the special inquiry officer's decision that the final portion of section 101(f) has no application to the present case. We accept the position of the special inquiry officer that he would have found good moral character established and would have granted voluntary departure as a matter of administrative grace, were it not for his impression that the respondent could not, as a matter of law, establish good moral character while on probation. We therefore find that the respondent has established that he has been a person of good moral character for the requisite period. Since the special inquiry officer denied voluntary departure solely on the basis of a mistaken notion of

the law, no useful purpose would be served by a remand and **we** shall therefore grant voluntary departure ourselves. The following order will be entered.

**ORDER:** It is ordered that the appeal is sustained insofar **as** it relates to the denial of voluntary departure.

*It is further ordered* that the outstanding order of deportation be withdrawn and that the respondent be permitted to **depart** from the United States voluntarily to any country of his **choice** within 30 days from the date of this order or any extension **be-** yond that time as may be granted by the District Director; **and** that, in the event of failure so to depart, the respondent shall **be** deported as provided in the special inquiry officer's order.