## UNITED STATES ex rel. VOLPE v. SMITH, DIRECTOR OF IMMIGRATION.

No. 724. Argued May 10, 1933.—Decided May 22, 1933.

*Mr. John Elliott Byrne,* with whom *Mr. Frank R. Reid* was on the brief, for petitioner.

*Mr. Whitney North Seymour,* with whom *Solicitor General Thacher* and *Messrs. W. Marvin Smith* and *Albert E. Reitzel* were on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

In 1906, when sixteen years old, petitioner, Volpe, entered the United States from Italy as an alien. He has resided here continuously since that time, but has remained an alien.

In 1925 he pleaded guilty and was imprisoned under a charge of counterfeiting obligations of the United States—plainly a crime involving moral turpitude.

During June, 1928, without a passport, he made a brief visit to Cuba. Returning, he landed from an airplane at Key West, Florida, and secured admission by Immigrant Inspector Phillips.

December 15, 1930, Volpe was taken into custody under a warrant issued by the Secretary of Labor which charged him with being unlawfully in this country because " he has been convicted of, or admits the commission of a

felony, or other crime or misdemeanor, involving moral turpitude, to-wit: possessing and passing counterfeit U.S. War Savings Stamps, prior to his entry into the United States."

Following a hearing, a warrant of deportation issued and he was taken into custody. Claiming unlawful detention, he instituted habeas corpus proceedings in the District Court of the United States at Chicago. That court dismissed the petition and remanded him to the custody of S. D. Smith, District Director of Immigration at Chicago, for deportation. The Circuit Court of Appeals affirmed the judgment [62 F. (2d) 808] and the matter is here by certiorari.

The only substantial point which we need consider is this:—Was the petitioner subject to deportation under the provisions of the Immigration Act of February 5, 1917, c. 29, 39 Stat. 874, 875, 889, 890, (U.S.C., Title 8, §§ 136, 155, 173) because he reëntered the United States from a foreign country after conviction, during permitted residence in the United States, of a crime committed therein which involved moral turpitude? Relevant provisions of the Act of 1917 are in the margin.*

---

* Sec. 1. That the word "alien" wherever used in this Act shall include any person not a native-born or naturalized citizen of the United States; . . .

Sec. 3. That the following classes of aliens shall be excluded from admission into the United States: . . . persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; . . .

Sec. 19. That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; . . . except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude,

Upon this question federal courts have reached diverse views. The cases are cited in the opinion announced below in the present cause.

We accept the view that the word "entry" in the provision of § 19 which directs that "any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; . . . shall, upon the warrant of the Secretary of Labor, be taken into custody and deported," includes any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one. And this requires affirmance of the challenged judgment.

The power of Congress to prescribe the terms and conditions upon which aliens may enter or remain in the United States is no longer open to serious question. *Turner* v. *Williams*, 194 U.S. 279; *Low Wah Suey* v. *Backus*, 225 U.S. 460, 468; *Bugajewitz* v. *Adams*, 228 U.S. 585, 591.

That the second coming of an alien from a foreign country into the United States is an entry within the usual acceptation of that word is clear enough from *Lewis* v. *Frick*, 233 U.S. 291; *Claussen* v. *Day*, 279 U.S. 398.

An examination of the Immigration Act of 1917, we think, reveals nothing sufficient to indicate that Congress did not intend the word "entry" in § 19 should have its ordinary meaning. Aliens who have committed crimes while permitted to remain here may be decidedly more objectionable than persons who have transgressed laws of another country.

---

committed at any time after entry; . . . any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; at any time within three years after entry, any alien . . . who enters without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported: . . .

It may be true that if Volpe had remained within the United States, he could not have been expelled because of his conviction of crime in 1925, more than five years after his original entry; but it does not follow that after he voluntarily departed he had the right of reëntry. In sufficiently plain language Congress has declared to the contrary.

With hesitation, the Solicitor General suggested here that possibly the cause had abated, since S. D. Smith is no longer District Director of Immigration at Chicago, where he formerly held the petitioner in custody. The record indicates that Smith has continued to be an officer in the Department of Labor, although not presently stationed at Chicago. So far as we are advised, under existing regulations, he may carry into effect the order of deportation. Moreover, the cause was permitted to proceed without question, as instituted, long after Smith is said to have left Chicago; and the petitioner insists that no cause has been shown for abatement. The point, we think, lacks merit.

The judgment is

*Affirmed.*