## UNITED STATES ex rel. MATTERAZZA v. FOGARTY.

District Court, W. D. New York.

Jan. 17, 1936.

Joseph Kaufman, of Rochester, N. Y., for the motion.

Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., opposed.

RIPPEY, District Judge.

A warrant was issued by the Assistant Secretary of Labor on August 28, 1935, for the deportation of the relator and her son, Francesco Izzo, under the provisions of section 19 of the Immigration Act of February 5, 1917 (8 U.S.C.A. § 155), on the ground that they were persons likely to become public charges at the time of their entry.

A hearing was had on June 12, 1935. on a department order of arrest dated May 20, 1935. It was then adjourned to June 26th to enable the petitioners to procure counsel, and on the latter date they appeared with counsel who participated in the examination of the witnesses.

It appeared that Mrs. Matterazza was forty years of age, that in 1915 she was married to John Izzo at Calvi Risorta, Italy, and that he died in Italy January 20, 1931, never having been in the United States. On June 27, 1932, she married Joseph Matterazza, a citizen of the United States who is still living. The relator has one son, who was born September 9, 1921, in Italy. Mrs. Matterazza was first admitted to the United States on July 25, 1933. At that time she declared in the application for the consular immigration visa that her husband had $1,700 deposited in the Union Trust Company of Rochester, N. Y. On entry to the United States at the Port of New York, she came to Rochester and went to live with her husband at 92 Romeyn street. Her husband thereafter transferred the real property on Romeyn street to her,

on May 25, 1934, and the bank account was put in their joint names prior to the giving of the deed to the real property. There was only $700 in the account when the transfer was made, and it was closed out on April 4, 1934, the money being used for the support of the family while the husband was out of work. In July, 1934, the relator returned to Italy to get her son, and she re-entered the United States with her son on November 1, 1934, on the steamship Saturnia through the Port of New York, being then in possession of a return permit No. 986,178 issued to her on June 21, 1934. The boy was at that time in possession of an unexpired immigrant visa issued October 3, 1934, by the United States Consul in Naples. In the application for that visa the statement was made that he would have $60 on landing, that he was destined to his stepfather, who was making $18 weekly and who owned real property assessed at $2,040. The relator actually had less than $20 when she landed in New York on November 1, 1934, and her son had no money, but the real property at 92 Romeyn street, Rochester, then stood in her name. On her return to the United States she found her husband confined in the Monroe county jail charged with having received stolen property. On December 24, 1934, the husband was committed to the Rochester State Hospital for the Insane and is still confined there.

The only financial resources that the relator had on November 1, 1934, was the real property on Romeyn street, and she and her son have since been supported entirely by the welfare department of the city of Rochester, N. Y. She and her husband had applied for welfare relief in August, 1933, and again in October, 1933, in February, 1934, and in April, 1934, but relief was denied. Relief was not granted until the husband had been confined in Monroe county jail and the relator was unable to provide for herself and her child. The relator testified that she had no prospect of financial support for herself and her son except of welfare relief. It appeared that at the time of her first entry her husband did not have steady work and had work only when employed by the CWA. The money with which her son was brought from Italy was that left by his father and was entirely used up with the expenses for the passage, and when the relator arrived in New York on November 1, 1934, with her son, as above indicated, she had less than $20, her husband was in jail, and she had no hope of financial support, and it became necessary for her to apply immediately for relief from the welfare department of the city of Rochester. It also appears that she has been unable to raise any money by way of mortgage on the real property or to sell it. The relator has applied for citizenship as a wife of a citizen of the United States.

There was no question raised in this case but that the relator had a fair hearing and that none of her rights were invaded. There is evidence to support the findings of the immigration authorities and, if the warrant was legally issued, the court cannot further inquire. United States ex rel. Patricola v. Karnuth (D.C.) 9 F.Supp. 961. The warrant of deportation is based on a re-entry November 1, 1934. The relator claims that, inasmuch as she then had a re-entry permit, she cannot legally be deported on the present warrant. It has been held, however, that the possession of a re-entry permit does not exempt the alien from compliance with the requirements of the immigration law and regulations for admission or from exclusion on the ground that she was likely to become a public charge, and that the only effect of such a permit was to show that the alien was returning from a temporary visit abroad. United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298, affirming (C.C.A.) 62 F.(2d) 808; United States ex rel. Spina v. Karnuth (D.C.) 3 F.Supp. 774; United States ex rel. Tavilla v. Karnuth (D.C.) 3 F.Supp. 776; United States ex rel. Damiano v. Archibald (D.C.) 5 F.Supp. 297; Ex parte Di Stephano (D.C.) 25 F.(2d) 902; 8 U.S.C.A. §§ 210 (f), 223. The entry on November 1, 1934, constituted a new entry within the meaning of the immigration law.

The writ of habeas corpus must therefore be discharged and the relator remanded to the custody of the immigration authorities, and it is so ordered.