## UNITED STATES ex rel. MALESEVIC v. PERKINS et al.
### No. 109.

District Court, W. D. Pennsylvania.

Dec. 23, 1936.

Charles F. Uhl, U. S. Atty., and J. F. McDonough, Asst. U. S. Atty., both of Pittsburgh, Pa., for the Government.

Zeno Fritz, of Pittsburgh, Pa., for relator.

GIBSON, District Judge.

Savo Malesevic, also known as Sam Males, has obtained a writ of habeas corpus, and the Divisional Director of Immigration has filed his return thereto. Upon hearing, the following facts were developed:

The petitioner, theretofore a resident of Yugo-Slavia, legally entered this country, at the port of Boston, in September, 1913, and has since remained therein with the exception of a visit to his native land, later mentioned. In 1923 he was married to a citizen of this country and by her has had two sons, who were born in the United States.

In 1931 he made application for, and received, a re-entry permit from the proper Immigration authority, upon which he re-entered the United States on August 12, 1931, having been out of this country from June 3, 1931, to that date.

Prior to his visit to Yugo-Slavia, the petitioner had been convicted at No. 10 May term, 1919, of the quarter sessions court of Allegheny county, Pa., of breaking and entering a building and larceny, a felony, and involving moral turpitude and had been sentenced to a term of from two to four years. This sentence was served. In addition to the felony charge, the petitioner was sentenced to several short terms of imprisonment in jails, but upon misdemeanor charges of violation of state liquor laws.

Except in two particulars the facts of the instant case parallel those of United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298. In each case the petitioner had, when quite young, been legally admitted to the United States, and thereafter had been imprisoned upon a charge involving moral turpitude. Each petitioner had left the country upon a short visit, and had returned within a period less than five years from the date of his previous conviction, and had later been taken into custody upon the charge of illegal entry upon the return. The present petitioner, as stated, had a re-entry permit, while Volpe had not, but this difference in situation was immaterial, as the deportation order in the Volpe Case was not based upon the lack of such permit or of a passport. Also section 10 of the Act of May 26, 1924 (U.S.C.A. tit. 8, § 210), is in part as follows:

"(f) *Effect of permit on rights of alien.* A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning. (May 26, 1924, c. 190, § 10, 43 Stat. 158.)"

The only difference in the situation of the two aliens which calls for comment is found in the effect of a Pennsylvania statute claimed by the present petitioner which was not applicable to Volpe.

Section 19 of the Act of February 5, 1917 (title 8 U.S.C.A., § 155), which orders the deportation of aliens convicted of crimes involving moral turpitude, contains a proviso, as follows:

" * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned."

The Pennsylvania statute (section 181, Act of March 31, 1860, P.L. 382, title 19, § 893, Purdon's Penn.Statutes, Annotated), is as follows:

"Where any person hath been or shall be convicted of any felony, not punishable with death, or any misdemeanor punishable with imprisonment at labor, and hath endured or shall endure the punishment to which such offender hath been or shall be adjudged for the same, the punishment so endured shall have the like effects and consequences as a pardon by the governor, as to the felony or misdemeanor whereof such person was so convicted:

"Provided, That nothing herein contained, nor the enduring of such punishment, shall prevent or mitigate any punishment which the offender might otherwise be lawfully sentenced on a subsequent conviction for any other felony or misdemeanor, and that the provisions of this section shall not extend to the case of a party convicted of wilful and corrupt perjury."

No question has been raised, or can be raised, as to the power of the Pennsylvania Legislature to exercise pardoning jurisdiction. The contention of counsel for the government is not directed against that power, but is to the effect that the pardon granted by the statute is not the full, com-

plete pardon contemplated by the federal act of 1917, supra, but is a mere restoration of civil rights qualified by a reservation that such restoration shall not mitigate any punishment prescribed by law for a subsequent conviction. It is also asserted, in opposition to the petition, that the pardon contemplated by the federal statute is not such a statutory pardon as that bestowed by the Pennsylvania statute. To sustain this claim, the United States Attorney points out that this statute is peculiar to Pennsylvania, and therefore could not well have been contemplated by the Congress, because its effect, under petitioner's contention, would be to render the status of an alien residing in (or convicted in) Pennsylvania different from that of an alien residing in any other state. Also, attention is called to the provision of the act of 1917 which prohibits deportation when the sentencing judge shall make a recommendation to the Secretary of Labor that the defendant alien shall not be deported. This provision, it is claimed, makes it plain that the Congress had in mind some mitigating feature in the alien's offense which might properly relieve him from deportation, and not such a blanket restoration of civil rights as granted by the Pennsylvania Act to convicted felons.

I should not be frank if I were to declare the contentions of the government counsel to be without weight. And doubts as to the law to be applied are not lightened by the conflicting equities which appear. On the one hand, the petitioner's offenses have been committed in this country after he had reached years of maturity, and his deportation would mean separation from his family and exile—a punishment much more severe than any undergone under any of the sentences heretofore imposed upon him. On the other hand, the relator has never sought citizenship and, in fact, is undesirable not only as a citizen but as a resident.

Nevertheless, while some doubt has asserted itself, I have resolved that doubt in favor of the petitioner. The Pennsylvania statute, while undoubtedly mainly designed as a relief to a harassed Executive, is just as much a pardon—and probably just about as wise—as many bestowed by governor or board of pardons. If the pardon granted by it was not in actual contemplation of the Congress, it at least comes within the wording of the federal statute; and in such case, the act being plainly within the constitutional power of the Congress, it is not the province of this court to read into it a limitation not plainly expressed.

The relator will therefore be discharged from custody.