## In re NUNEZ.
### No. 13092–M.

District Court, S. D. California, Central Division.

April 28, 1937.

D. C. Marcus, of Los Angeles, Cal., for petitioner.

Leo V. Silverstein, Asst. U. S. Atty., of Los Angeles, Cal., for the United States.

McCORMICK, District Judge.

·In my opinion, the deportation of this alien Mexican woman at this time would be violative of due process of law and contrary to the public policy of the United States as declared in decisions of the Supreme Court. See Pierce v. Society of Sisters, 268 U.S. 510, 534, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Meyer v. Nebraska,

262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446.

The file record of the immigration service shows that the alien lawfully entered the United States with her mother when about 12 years of age. She is now approximately 28, and has been a continuous resident of the United States since her said first entry. She lawfully married at Los Angeles, Cal., on July 20, 1924, and there were four children born of such marriage, three of whom are now living with their mother, the alien, in this country. Until her husband's fatal illness in 1931, the family was sufficiently supported by him, but since 1932 the alien and her children have been necessarily maintained at public expense. She has been ill during much of the time since her husband's death, and she is now an arrested tubercular and is otherwise in need of medical and surgical attention, and ·is unable to work or earn a living for herself or her children. Her three children are natives of the United States and are of the tender ages of 8, 7, and 5 years, respectively.

Upon her aforesaid, entry on December 8, 1922, the alien was given an identification card which she still has in her possession and which she has lawfully exhibited and used several times for temporary visits to Tia Juana, Mexico.

The last time she left the United States on one of such short trips was on August 3, 1934. She returned through the port of San Ysidro, Cal., within a few days. She was arrested about June 13, 1935, by the immigration officers, and after due hearings was found to be: (1) "A person likely to become a public charge at the time of entry"; and (2) "Becoming a public charge within five years after entry into the United States from causes not affirmatively shown to have arisen subsequent thereto"; and by the Secretary of Labor has been ordered to be deported under section 19 of the Immigration Act of 1917, 8 U.S.C.A. § 155. There is no claim or evidence that the alien is subject to deportation for anything except that she is destitute and has been or continues to be a public charge within the immigration laws of the United States. Her character or activities have not been questioned and are not in issue.

There is authority that the re-entry permit of the alien issued to her in 1922 cannot be invoked to exempt her from the ban of immigration laws or from exclusion because likely to become a public charge or be-

coming such in relation to her last entry in August, 1934. Canciamilla v. Haff (C.C.A. 9) 64 F.(2d) 875; Kumaki Koga v. Berkshire (C.C.A.9) 75 F.(2d) 820; United States ex rel. Matterazza v. Fogarty (D.C. N.Y.) 13 F.Supp. 403.

The record clearly shows facts under these decisions that warranted the findings of the immigration authorities concerning the poverty and dependence of the alien upon public bounty, and, if such matters were the sole elements to be considered in this habeas corpus proceeding, the Secretary's warrant of deportation would be regarded as having been fairly issued and should be executed. But the status of this alien in this country is naturally and inextricably tied to the lives and welfare of her three minor American-born children who cannot be legally deported or excluded from the United States.

If the mother is deported, the children should and probably must go with her to Mexico. The record shows that it is the children who are the major recipients of the public benefactions, and, if the deportation of this alien mother is sought to be justified upon the claim of public economy, this result will be attained only slightly. There is no one in the United States able to support the children. They must continue to be public charges in the United States or be forced to go to Mexico with their mother. The first eventuality is safer and more humane than the last. Sound public policy and the welfare of the American-born children of the alien preclude as a matter of law her deportation at this time.