JOHANNES RASMUSSEN
v.
WILLIAM B. ROBINSON,
Director of Police, St. Croix, Virgin Islands,
et al.

Civ. No. 23

District Court of the Virgin Islands

Div. of St. Croix at Christiansted

November 6, 1946

*See, also, 68 F. Supp. 930*

*Same case on appeal, see p. 485, this volume*

GEORGE H. T. DUDLEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for petitioner*

CROXTON WILLIAMS, Charlotte Amalie, St. Thomas, Virgin Islands, *for respondents*

MOORE, *Judge*

This matter came on for hearing upon a writ of habeas corpus. The petitioner was arrested upon a warrant of deportation issued by the Exclusion and Expulsion Section of the Department of Justice under the direction of the Attorney General which charged as follows: ". . . that the alien Johannes Rasmussen or Johs. Rasmussen who entered the United States at Charlotte Amalie, St. Thomas, V. I., on the 28th day of July, 1944, is subject to deportation under the following provisions of the laws of the United States, to wit: the Act of February 5, 1917, in that he admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: Embezzlement."

At the time of this hearing the petitioner was on bond, agreed to by the Immigration Service pending hearing on the writ. Both sides agreed, however, to raise no point that the defendant was not at the time of hearing in actual custody as he could easily be re-arrested at any time upon the warrant and that he would be surrendered upon his bond at the time of this hearing.

The facts of the case are as follows: The petitioner is 38 years old; a native and citizen of Denmark; has been a legal and continuous resident of the Virgin Islands of the United States at Charlotte Amalie, St. Thomas, since July 22, 1932, when he was admitted here for permanent residence. That on July 11, 1944, the petitioner left the island of St. Thomas on the fishing boat Snow White, of American registry, owned by the Deep Sea Fishing Company, Inc., a corporation organized under the laws of

the Municipality of St. Thomas and St. John, Virgin Islands, U. S., and went to the island of St. Martin, French West Indies; that upon arrival of the petitioner at the said island of St. Martin, petitioner was detained and transferred from said vessel to the U.S.S. Conqueror by the police authorities of the Municipality of St. Thomas and St. John and returned to the island of St. Thomas July 28, 1944, to stand trial for two certain charges of embezzlement committed in St. Thomas during the years 1941 to 1944 (Cr. Nos. 57 and 74; District Court of the Virgin Islands, Division of St. Thomas and St. John).

Upon his re-entry on July 28, 1944, the petitioner applied for admission as a returning resident. This application was granted by the Board of Immigration Appeals, Washington, D. C. On January 16, 1945, this petitioner pleaded guilty to the above two charges of embezzlement (Cr. No. 57, 1944 and Cr. No. 74, 1944) and was sentenced by this court to serve a term of four years on each, the said sentences to run concurrently. This court also incorporated the following recommendation in the said sentences: "Incorporated in this judgment and sentence herein, in accordance with section 155 of Title 8 of the United States Code, and based upon the record of the hearing in which it was shown to the satisfaction of the Court that (1) this defendant has during his twelve years in the Virgin Islands been a civic minded, active, cooperative and unusually well liked and otherwise law-abiding resident of the Virgin Islands, and that (2) this defendant is married to a local resident of this municipality and has three children of the ages five, four and two, respectively, and who will be dependent upon him for support at the conclusion of the above sentence; and in view of the defendant's petition, unopposed by the District Attorney of the Virgin Islands, it is therefore

recommended to the Attorney General of the United States that the defendant, Johannes Rasmussen, be not deported as a result of the above conviction and sentence." The petitioner entered upon the service of said sentences on January 16, 1945, and by decision of the Board of Parole for the Virgin Islands, dated June 3, 1946, and approved by the Acting Governor of the Virgin Islands on or about June 10, 1946, the petitioner was released on parole from said sentences on June 11, 1946. Thereafter the warrant of deportation was served upon him and this writ filed.

This case raises two questions:

(1) Is this a "prior to entry" crime under the second section of the statute; and

(2) If it is a "prior to entry" crime under the second section, is this class excluded from the operation of the recommendation clause of the statute?

Considering question No. 1: These crimes of embezzlement were committed over a period from 1941 to 1944 more than five years after petitioner's original entry, and it is argued by petitioner that, therefore, this case comes under the first section of the statute dealing with crimes after entry, and that the second section of the statute deals with crimes committed prior to entry and outside the United States. In the case of United States ex rel. Volpe v. Smith, 62 F.2d 808, 810, the Circuit Court of Appeals, Seventh Circuit, reviewed this subject thoroughly, and this opinion was afterwards confirmed by the Supreme Court (289 U.S. 422, 53 S. Ct. 665, 77 L. Ed. 1298). The Circuit Court there held that an alien convicted in the United States for counterfeiting 19 years after the first "entry" and three years before re-entry after a visit to Cuba, was deportable. The court said: "Cases which hold that the deportable offense involving moral turpitude may have been committed in the United States or abroad are here collected. Cases which limit the commission of the

offense referred to by the statute to those committed abroad are also here collected."

The court further stated: "In Lewis v. Frick, 233 U.S. 291, 34 S. Ct. 488, 58 L. Ed. 967, and United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S. Ct. 354, 73 L. Ed. 758, the word "entry" as used in the above-quoted section was held to include a subsequent entry as well as the original entry. Why then should courts restrict its meaning by holding that the offense must be committed before the original entry? Finally, there is no reason — no basis for the distinction between like offenses committed abroad and those committed in the United States. When we make this statement we assume, of course, that appellant would be excludable had he practiced counterfeiting in Cuba. Are not the same reasons justifying his exclusion present if he counterfeited in the United States? The time limitations in the statute no doubt are in the nature of a Statute of Limitations, which has sound reason to support it. But a distinction based upon the place where the crime is committed is one which offers no rational explanation for the distinction which appellant has attempted to make," and concluded: "The question in the last analysis is a very narrow one. It is: What is the meaning of the word 'entry'? Does it mean original entry? Or do the courts give to the word a meaning unrestricted by a limiting adjective? Fortunately, the Supreme Court, in Claussen v. Day and Lewis v. Frick, supra, defined it as meaning what it says — not only the original, the second or the last entry, but any entry. Question number one should be answered in the affirmative."

▪ This case was confirmed by the United States Supreme Court. (United States ex rel. Volpe v. Smith, 289 U.S. 422, 426, 53 S. Ct. 665, 667, 77 L. Ed. 1298). The Supreme Court said in that case: "Upon this question federal courts have reached diverse views. The cases are

cited in the opinion announced below in the present cause. We accept the view that the word 'entry' in the provision of section 19 [8 U.S.C. § 155] which directs that 'any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; . . . shall, upon the warrant of the Secretary of Labor, be taken into custody and deported,' includes any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one. And this requires affirmance of the challenged judgment," and, further:

"That the second coming of an alien from a foreign country into the United States is an entry within the usual acceptation of that word is clear enough from Lewis v. Frick, 233 U.S. 291, 34 S. Ct. 488, 58 L. Ed. 967; United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S. Ct. 354, 73 L. Ed. 758.

"An examination of the Immigration Act of 1917, we think, reveals nothing sufficient to indicate that Congress did not intend the word 'entry' in section 19 should have its ordinary meaning. Aliens who have committed crimes while permitted to remain here may be decidedly more objectionable than persons who have transgressed laws of another country.

"It may be true that, if Volpe had remained within the United States, he could not have been expelled because of his conviction of crime in 1925, more than five years after his original entry; but it does not follow that, after he voluntarily departed, he had the right of re-entry. In sufficiently plain language Congress has declared to the contrary."

The Third Circuit Court for this Circuit has also further clarified this rule in the case of United States ex rel. Santarelli v. Hughes, 116 F.2d 613, on page 616, in stating: "It is asserted that the phrase 'prior to entry' modi-

fies 'admitted' and not 'commission', hence the admission (here the plea of guilty) having taken place in Philadelphia, the clause does not apply. Any such construction flies in the face of common sense in grammar hardened into law. It violates 'one of the simplest canons of statutory construction, namely, that a limiting clause is to be restrained to the last antecedent unless the subject matter requires a different construction.' Here 'subject matter does not require a different construction' for plainly the United States is interested in the character of the alien and not in his conversation. The phrase 'prior to entry', then, has a 'peculiar fitness' when applied to commission."

It seems clear then in the instant case that had the petitioner remained in Saint Thomas after the "commission" of the crime of embezzlement he could not have been expelled for this crime committed during the years of 1941 to 1944 more than five years after his original and only entry. However, after he departed the country and entered again on July 28, 1944, this placed the "commission" prior to that entry of July 28, 1944.

■ This brings us to a consideration of the second question to wit: Is the "prior to entry" class of deportables excluded from the operation of the recommendation clause of the statute? On this question the Circuit Court of Appeals of this Circuit has held in the case cited supra (United States ex rel. Santarelli v. Hughes, 116 F.2d 613) that "the prior to entry" class of deportables is excluded from the recommendation clause. The facts in that case are similar to those in the instant case. For in that case Santarelli was brought back from Canada to the United States and pleaded guilty in Philadelphia to a crime "committed" in Philadelphia more than five years after his original entry, but before his return to the United States. The Court, after conviction, placed him on five years probation. It was argued that the terms and conditions of

his probation were tantamount to a recommendation against deportation. After reviewing this contention at length, the Circuit Court said: "However, we do not feel called upon to decide this question because, in our view, the 'prior to entry' class of deportables is excluded from the recommendation clause. Statutory language must be construed in a sense of accomplishment. American judges can scarcely impose sentences in foreign courts. So to hold the statute pertinent would cut it down to the rare case (that at bar) where the alien defendant leaves and then re-enters the country (here on a waiver of extradition) for the purpose of standing trial for, or pleading guilty to, a crime involving moral turpitude locally committed. . . ."

■ It has been strongly argued that this second question was not present in the Volpe case supra decided by the Supreme Court in 289 U.S. 422, 53 S. Ct. 665, 77 L. Ed. 1298, and that the decision of this question by the Third Circuit Court of Appeals is against the weight of authority and should be reconsidered in the light of this case, and that this small class of rare "prior and entry" cases were intended to be among the other cases where the crime was tried in a court of the United States and the judge thereof had all the opportunity to determine the merits thereof, as is true in the "after entry" cases. However, whatever merit there may be in this argument, this court certainly does not feel that a district court is in a position to reconsider a decision of the Circuit Court of its Circuit. The Circuit Court itself may do so in the absence of a Supreme Court decision. The decision of the circuit court is binding upon the district courts in that circuit until and unless reversed by that circuit court or by the United States Supreme Court. This particular point of applicability of the recommendation clause to "prior to entry" cases, tried by courts in this country, has not been decided

by the United States Supreme Court and, therefore, the rule of this circuit governs until the Supreme Court passes upon it.

 This court made the above recommendation at the time of sentence because of the merit which it found in the facts of the case. No question of the non-applicability of the recommendation to this class of cases was raised and the United States District Attorney did not oppose the recommendation. However, since the question is now raised and argued by briefs upon this writ of habeas corpus, this court is bound to follow the opinion cited herein of the Circuit Court of this circuit and to hold that its own recommendation in this case is inoperative in view of the opinion of the Circuit Court that this class of cases is excluded from the recommendation clause. This duty of the District Court is fully outlined in the statement of the Seventh Circuit Court in the Volpe case, supra, United States ex rel. Volpe v. Smith, 62 F.2d on page 809, with reference to question No. 1, but its reasoning is also applicable to all questions when it stated: "It appears that this question has been decided against the United States by the Circuit Court of Appeals of two circuits. A District Court, in my opinion, should accept that as the weight of authority and should follow it, unless and until a different rule is laid down by the Supreme Court or by the Court of Appeals of this Circuit."

In view of the foregoing and in view of the opinion of the Circuit Court of Appeals of this circuit in the Santarelli case that "In our view, the 'prior to entry' class of deportables is excluded from the recommendation clause", this court is bound to hold that its recommendations in the judgments of January 16, 1945 are inoperative and the writ is therefore denied.