DEL GUERCIO, District Director, Immigration & Naturalization Service, U. S. Department of Justice No. 16, v. DELGADILLO.

No. 11225.

Circuit Court of Appeals, Ninth Circuit.

Jan. 22, 1947.

James M. Carter, U. S. Atty., Ronald Walker, Attilio di Girolamo and Clark Stephens, Asst. U. S. Attys., and William Strong, Sp. Asst. U. S. Atty., all of Los Angeles, Cal. (Bruce G. Barber, Chief, Adjudications Div., Immigration and Naturalization Service, of Los Angeles, Cal., on the brief), for appellant.

Albert Lax, of San Pedro, Cal., for appellee.

Before GARRECHT, MATHEWS, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee, being in the custody of appellant for the purpose of being deported to Mexico, the country of his birth, petitioned the trial court for a writ of habeas corpus. The writ was granted and after hearing appellee was ordered discharged. From the order of discharge, appellant, to whom we shall hereafter refer as the Immigration Director, appeals.

It appears that appellee, a citizen of Mexico, was admitted to the United States for permanent residence in 1923. He continued to reside here until June 1942. During that month he shipped as a member of the crew of the American ship "Andrew Jackson", then under the operational control of the United States Government, through the War Shipping Administration.

On July 12, 1942, the "Andrew Jackson" was torpedoed off the coast of Cuba. Appellee was rescued and taken to Cuba, where he remained one week. He was then flown to Miami, Florida, and admitted to the United States in transit by immigra-

tion officers for a period of not more than 30 days for the purpose of reshipping foreign from San Pedro, California.

On March 27, 1944, in the Superior Court of Los Angeles County, California, appellee was convicted of second degree robbery. He was thereafter sentenced to imprisonment from one year to life.

On June 23, 1944 a warrant for the arrest of appellee was issued charging him with being in the United States in violation of the Immigration Act of February 5, 1917.[1] Such violation consisted of being sentenced to imprisonment for one year or more upon conviction of a crime involving moral turpitude, said crime being committed within five years after entry into the United States.

Hearings on the deportation proceedings for the purpose of permitting appellee to show cause why he should not be deported were held at San Quentin Penitentiary where appellee was confined under the sentence imposed pursuant to the felony conviction of March 27, 1944. Said hearings were conducted by the Presiding Inspector of the Immigration Service. He found appellee's return to the United States at Miami in July 1942 constituted an "entry" within § 19(a), supra, and recommended that appellee be deported. The Board of Immigration Appeals adopted this recommendation and twice denied appellee's motions to reopen the administrative hearing.

Appellee was surrendered into the custody of the Immigration Director on August 25, 1945.

The question for determination is: Was the arrival of appellee at Miami, Florida, in July 1942, after landing in Cuba, an "entry" within § 19(a) of the Immigration Act, supra? We find that it was. The Supreme Court of the United States, in the case of United States ex rel. Volpe v.

Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298, held that the word entry as used in § 19(a) of the statute "includes any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one." 289 U.S. 422, 425, 53 S.Ct. 665, 667, 77 L.Ed. 1298.

In an earlier case involving the same statute, the Supreme Court said: "The word 'entry' by its own force implies a coming from outside. The context shows that in order that there be an entry within the meaning of the Act there must be an arrival from some foreign port or place." United States ex rel. Claussen v. Day, 279 U.S. 398, 401, 49 S.Ct. 354, 355, 73 L.Ed. 758.[2]

Whether or not the alien intended to land on the foreign soil or intended to return to the United States is immaterial in considering whether his return to this country constitutes an "entry" within the Immigration Act. In Taguchi v. Carr, 9 Cir., 62 F.2d 307, we held that a fisherman-alien, shipwrecked and ordered by his captain to land on an island of Mexico, upon subsequently returning to the United States made an entry within § 19(a), supra. And in Blumen v. Haff, 9 Cir., 78 F.2d 833, certiorari denied 296 U.S. 644, 56 S.Ct. 248, 80 L.Ed. 458, we held that aliens brought to this country by extradition from England had "entered" within the meaning of that section.

Appellee argues these cases are distinguishable because the aliens involved were not hazarding their lives in time of war on vessels under the control of the United States. We cannot agree that such a situation has any controlling effect.

If "any coming of an alien from a foreign country into the United States" is an "entry" (United States ex rel. Volpe v. Smith, 289 U.S. 422, 425, 53 S.Ct. 665, 667,

---

[1] Sec. 19(a) of the Immigration Act of February 5, 1917, 39 Stat. 889, 8 U.S. C.A. § 155(a): " * * * any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States * * * shall, upon the warrant of the Attorney General, be taken into custody and deported. * * * In every case where any person is ordered deported from the United States under the provisions of this Act, or of any law or treaty, the decision of the Attorney General shall be final".

[2] See, also, United States ex rel. Stapf v. Corsi, 287 U.S. 129, 132, 53 S.Ct. 40, 77 L.Ed. 215.

77 L.Ed. 1298) the circumstance that appellee was brought to the United States under the general supervision of the Government after landing on Cuban soil as a result of his wartime service cannot alter the fact that his return to Miami in July 1942 is within the definition of an "entry" as laid down by the Supreme Court. Appellee argues that it is difficult to reconcile one's conscience to the proposition that the Government will order a seaman into submarine infested waters knowing landings on foreign soil may be required and then brand the seaman's return as an "entry". This argument does not take into account the fact that so far as § 19(a) is concerned no criminal or prejudicial stigma attaches in holding an arrival in the United States from foreign soil an "entry". It is the commission of a crime by an alien involving moral turpitude within five years from the time of such entry and for which he is sentenced to imprisonment for a year or more which carries the deportation penalty. The Government is not asking that appellee be deported because the exigencies of war forced him to land in Cuba. Appellee is being deported because, within five years after his entry, he was convicted of robbery.

Appellee also urges that his administrative hearing was unfair because the Department of Justice denied him a reasonable time to arrange for his defense; and that the Department of Justice further erred in compelling him to submit to a deportation hearing before being taken into custody.

Appellee relies on § 150.6 of Title 8, Code of Federal Regulations, subsection (a) of which reads: "150.6 Hearing: (a) when to be accorded under warrant. After the alien has been taken into custody under a warrant of arrest and has been given a reasonable time to arrange for his defense, including, if desired, representation by counsel * * * the alien shall be granted a hearing to determine whether he is subject to deportation on the charges stated in the warrant of arrest. * * *"

The Immigration Director served his warrant of arrest on appellee on July 8, 1944, while the latter was confined in San Quentin Penitentiary. On that date appellee was informed of his right to representation by counsel and his right to have a reasonable time to prepare his defense in the proceedings to show cause. Appellee signified he understood his rights and that he did not wish to be represented by counsel. After the July 10th hearing was concluded there was a continuance to August 21, 1944 before a final hearing was had.

Appellee contends that because he was in San Quentin when the hearings were held he had not "been taken into custody" within § 150.6(a), supra. The contention is answered by the requirements of § 150.5 (b) [3] of the same regulations, which forbid removal of an alien confined in an institution until the warrant of deportation has been served and the Immigration Service is "completely ready to deport".

We think appellant had a "reasonable time" to arrange for his defense, including, if desired, representation by counsel. He was fully informed of his rights and of the single charge against him, i.e., deportation because of conviction of a felony within five years after entry into the United States. No longer period was requested by appellant to arrange for his defense and he indicated he did not wish the aid of counsel.

The record discloses that at the beginning of the hearing on June 10, 1944, appellee answered "Yes" to the question of whether he was "now ready and willing to proceed with this hearing".

No illegality appearing in the detention of appellee by the Immigration Director, the judgment granting the writ of habeas corpus ordering the release of appellee from custody is reversed.

Judgment reversed.

---

[3] By an amendment to the regulations effective July 31, 1944, this section became subsection (e), 9 F.R. 9346.