## UNITED STATES ex rel. KUSTAS v. WILLIAMS et al.

### THE STEEL SEAFARER.

Misc. 1549.

United States District Court
E. D. New York.

June 7, 1951.

Jacob Rassner and Jacob M. Rudy, New York City, for relator (Jack Steinman, New York City, of counsel).

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for District Director (George Taylor, Asst. U. S. Atty., Brooklyn, N. Y., Louis Steinberg, Dist. Counsel, Immigration and Naturalization Service, and Oswald I. Kramer, Atty., Immigration and Naturalization Service, New York City, of counsel).

Kirlin, Campbell & Keating, New York City, for Isthmian S. S. Co. and Master of S. S. Steel Seafarer (Delbert M. Tibbetts, New York City, of counsel).

BYERS, District Judge.

This habeas corpus proceeding requires decision concerning the legality of the detention of the relator on the ship Seafarer, on its arrival in this port on May 9, 1951, pursuant to order of an immigrant inspector acting under the applicable statute and regulations. The basis of the order was that the relator was excludable as an alien seeking admission to the United States.

. The facts are not in dispute and may be briefly stated: Kustas, a Greek, first arrived here in 1940 as a seaman and remained beyond the permitted period, and later departed voluntarily. He has come and gone frequently during the intervening years, incidentally marrying a citizen here and becoming the father of two children, the wife and children being locally resident.

Since 1943 he has often been a member of the crew of American ships, and has been passed by the Coast Guard for such service. On the argument this was called "screening", but just what that involved has not been made clear, i. e., the office and gauge of the mesh has not been stated, nor the possible flexibility of the "screen" itself.

In November of 1950 he signed on the S. S. Steel Seafarer in New York, for a foreign voyage and return; upon arrival, first at Boston and then in New York, he was ordered to be detained and temporarily excluded; his detention imposed an expense to the ship, which accounts for the appearance of the proctors for the owner in this proceeding; their experience in such cases is attested by reference to many reported decisions which have been consulted.

On the day of the production of the relator, May 21st, it appeared that the ship was about to sail, so upon the consent of the relator's attorneys and the attorney for the Immigration Service, it was agreed that the Immigration Authorities would take the relator into custody, at the expense of the owners of the ship, pending the filing of a return and such further proceedings as might ensue on the adjourned day, May 28th. That arrangement was stated and understood to be without prejudice, which means that, for present purposes, the relator is deemed to be on the ship in this port.

The relator's status resembles that of Colovis in United States ex rel. United States Lines, on Behalf of Colovis v. Watkins, 2 Cir., 170 F.2d 998, but a different statute and regulation are involved.

On the arrival of Kustas in Boston on May 7, 1951, as a member of the crew, he is deemed to have applied for admission to the United States under Section 3(5) of the Immigration Act, 8 U.S.C.A. § 203 (5). Thus Paragraph 1 of the Return, admitted in the Traverse.

See also, Lewis v. Frick, 233 U.S. 291 at page 297, 34 S.Ct. 488, 58 L.Ed. 967; United States ex rel. Volpe v. Smith, 289 U.S. 422 at page 425, 53 S.Ct. 665, 77 L.Ed. 1298.

His application led to an examination by the immigrant inspector at Boston, and resulted in the order of detention which has been recited; in other words, he has been denied shore leave, and the Immigration and Naturalization Service rely upon the statute, Title 8 U.S.C.A. § 137 et seq., as amended September 23, 1950, and Title 8, Code of Federal Regulations, Sections 174.2, 174.4 as promulgated thereunder, and 120.19 to sanction that denial.

The only administrative determination set forth in the return is: "7. The information upon the basis of which the immigrant inspector ordered the relator detained on board has been classified as confidential by the Commissioner of Immigration and Naturalization and may not be revealed."

The return itself is signed by an attorney "in the office of the District Counsel, Immigration and Naturalization Service, United States Department of Justice", and he does "certify and make return to the writ of habeas corpus based upon the records" of the Service.

I should suppose that so important a classification should be certified to by the Commissioner himself or a deputy having personal knowledge, to obviate any possible confusion between this case and that of another.

For convenient reference, the section of the statute involved and the regulations will be quoted:

8 U.S.C.A. § 137–4 as amended:

Sec. 5. "Notwithstanding the provisions of Sections 16 and 17 of the Immigration Act of February 5, 1917, as amended (39 Stat. 885–887; 8 U.S.C.A. §§ 152, 153), which relate to boards of special inquiry and to appeal from the decisions of such boards, any alien who may appear to the

examining immigration officer at the port of arrival to be excludable under section 1 shall be temporarily excluded, and no further inquiry by a board of special inquiry shall be conducted until after the case is reported to the Attorney General and such an inquiry is directed by the Attorney General. If the Attorney General is satisfied that the alien is excludable under section 1 on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest, safety, or security, he may deny any further inquiry by a board of special inquiry and order such alien to be excluded and deported."

Section 174.2, Title 8, Code of Federal Regulations:

*"Entry not permitted in special cases.*

"Any alien, including an alien seaman, even though in possession of a permit to enter, or exempted by law or regulation from obtaining or presenting a permit to enter, shall be excluded temporarily, * *, shall be ordered detained on board, if, at the time of application for admission at a port of arrival, the alien may appear to the examining immigration officer at such port to be excludable under section 1 of the act of October 16, 1918, as amended."

Section 174.4, Title 8, Code of Federal Regulations:

*"Hearing by board of special inquiry: action by the Commissioner.* (a) In the case of any alien temporarily excluded under the provisions of this part, no hearing by a board of special inquiry shall be held until after the case is reported to the Commissioner and such a hearing is directed by the Commissioner: *Provided,* That nothing in this part shall be deemed to authorize a hearing before a board of special inquiry in the case of any alien seeking to enter as a nonimmigrant pursuant to section 3(5) of the Immigration Act of 1924, as amended.

"(b) If the Commissioner determines that the alien is inadmissible to the United States under section 1 of the act of October 16, 1918, as amended, and that such inadmissibility is based on information of a confidential nature the disclosure of which would be prejudicial to the public interest, safety, or security, he may deny any hearing or further hearing by a board of special inquiry and order such alien to be excluded and deported."

Section 120.19, Title 8, Code of Federal Regulations: "It shall be the duty of the inspector to order detained on board, in accordance with the provisions of sections 19 and 20 of the Immigration Act of 1924, as amended (43 Stat. 164, 58 Stat. 817; 8 U.S.C.A. §§ 166, 167), * * * (c) any alien seaman who at the time of application for admission appears to the examining immigrant officer to be excludable under section 1 of the act of October 16, 1918, as amended (40 Stat. 1012, 41 Stat. 1008–9, 54 Stat. 673, 62 Stat. 268, Public Law 831, 81st Congress; 8 U.S.C.A. § 137). In emergent cases seamen covered by this section may be accorded hospital treatment as provided in the regulations relating to seamen."

It will be noted that the expression "any alien" in the statute has been supplemented in 174.2 to include an "alien seaman", however documented. Since the general would include the specific, it cannot be said that the terms of the regulation expand the statute.

The record contains no copy of the order of the immigrant inspector who made the examination recited in Paragraph 2 of the return; since that order is not attacked on the merits as having been arbitrary, United States v. Watkins, supra, but upon the ground that the provisions of Section 174.2 of the Code of Federal Regulations are invalid as "an unlawful delegation of legislative and executive authority and constitute an arbitrary and unreasonable distinction between seamen and other aliens seeking to enter the United States, are vague, * * *", it will be taken for granted that the order is such as would be authorized under Title 8 U.S.C.A. §§ 166 and 167, namely, an order to detain and deport. If the fact is otherwise, correction of this assumption can be seasonably suggested.

It has not been overlooked that the certification concerning the classification

somewhat adroitly seems to close the door to such inquiry as was made by the Court in the Watkins case, supra. That, however, cannot be deemed a sufficient ground upon which this Court could nullify the regulation in view of the attitude of Congress as expressed in the statute, concerning subversive activities of which the public has become belatedly aware, and in response to which the legislation was enacted.

The briefs for the relator and for the ship-owner narrow the issue to this: Is the regulation 174.2, which clothes the immigrant inspector with the same measure of authority that he possessed prior to the passage of the 1950 statute (known as the Subversive Activities Control Act) with reference to alien seamen, valid when exercised for the purpose of enforcing that law?

It is not new, Title 8 U.S.C.A. §§ 166 and 167, that an alien seaman is not entitled to the hearing which would be required in the case of other types of aliens: United States ex rel. D'Istria v. Day, 2 Cir., 20 F.2d 302 at page 303; Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 61 F.2d 745 at page 746; United States ex rel. Wei Yan Mun v. Shaughnessy, D.C., 89 F.Supp. 743, and I do not understand that United States v. Watkins, supra, 170 F.2d at page 1000, is to the contrary.

If the relator and the owner of the ship argue, as they seem to, that the 1950 statute conceals a self-imposed restriction upon the terms which the United States may prescribe (Knauff v. Shaughnessy, 338 U.S. 537 at page 542, 70 S. Ct. 309, 312, 94 L.Ed. 317) concerning the exercise of the privilege accorded to an alien who "seeks admission to this country", the contention is not fortified by reasoning, convincing or otherwise. The passage in that opinion to which reference is made is the most recent statement which should govern an interpretation of this law and regulation. The one under scrutiny, 174.2, is thought merely to carry out, for the purpose of the new statute, the pattern established in connection with enforcement of the law in its earlier form.

As has been said, this relator is in the position of an alien, seeking admission to the United States.

This writ is dismissed, which of course will have no bearing upon a later application, if one should be made, for such consideration as was extended in the cases of The Southern Prince, D.C., 4 F.Supp. 190, and Matsutaka v. Carr, 9 Cir., 47 F.2d 601.

Settle order.