UNITED STATES of America ex rel.
Cedric Henning BELFRAGE,
Petitioner,

v.

Frank P. KENTON, Warden at Federal
Detention Headquarters, and Edward J.
Shaughnessy, District Director of Immi-
gration and Naturalization at New
York, Respondents.

United States District Court
S. D. New York.

June 1, 1955.

See also 113 F.Supp. 56.

Blanch Freedman and Nathan Dambroff, New York City, for petitioner.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of New York, New York City, for respondents. Harold J. Raby and Eliot H. Lumbard, Asst. U. S. Attys., New York City, of counsel.

Lester Friedman, New York City, for Immigration and Naturalization Service.

DAWSON, District Judge.

This is a proceeding for a judicial review of a final administrative order of deportation which has been instituted by a writ of habeas corpus. The petition raises two principal points of law:

(1) May an alien who was first admitted to the United States in 1937 and left the United States in 1944, and was re-admitted to the United States in 1945 as a returning alien resident, be deported upon a finding that petitioner had been a member of the Communist Party in 1937 and 1938; and

(2) On the present record, is petitioner entitled to be enlarged on bail, pending final judicial review of the deportation order?

Issues as to the manner of conducting the deportation hearing and the sufficiency of the evidence to support the finding of deportability are also raised by petitioner.

The undisputed facts show the petitioner, a subject of Great Britain, first entered the United States in 1926. In July, 1937, he was admitted as an immigrant for permanent residence. His occupation was that of a writer and journalist. During World War II, he worked for the British Security Coordination Service in the United States, which was an intelligence agency of the British Government, and then in the Spring of 1944, went to England and there worked for the Ministry of Information. He continued thereafter in the work of that Ministry in France and Germany after the Allied landing in France and the invasion of Germany.

In the latter part of 1945, petitioner determined to resume his residence in the United States. His re-entry permit which had been issued in 1944 had expired on May 5, 1945, but he was issued a further re-entry permit entitling him to return to the United States as a returning alien resident. He re-entered the United States with this permission on October 28, 1945.

Deportation proceedings were instituted against petitioner in 1953 on two grounds: (1) that petitioner, *after entry* into the United States, was a member of, or affiliated with, the Communist Party of the United States; and (2) that *at the time of his entry*, he was an alien who was a member of, or affiliated with, an organization advocating overthrow of the government, to wit, the Communist Party of the United States. After long hearings, the Special Inquiry Officer of the Immigration and Naturalization Service directed the deportation of petitioner on both grounds. An appeal was taken to the Board of Immigration Appeals which sustained the deportation of petitioner on the first ground, but found that the second ground had not been established.

Petitioner has urged in this proceeding that he was deprived of due process of law in that the hearing was not conducted in accordance with the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. This point is without validity. Couto v. Shaughnessy, 2 Cir., 1955, 218 F.2d 758; Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830.

Petitioner also urges that because the Attorney General had announced a determination to drive subversive aliens from our shores, it was impossible to get a fair determination of the issues from the Board of Immigration Appeals. The careful analysis of the evidence by that Board, as reflected in its opinion, shows that such an accusation is without foundation. See Shaughnessy v. United States ex rel. Accardi, 75 S.Ct. 746.

■ Petitioner does raise an issue of law, however, which requires consideration. He urges that his deportation was sustained on the ground that he was a member of the Communist Party in 1937 and 1938, but that his last entry into the United States was in 1945, and that, therefore, it cannot be found, under Sec. 241(a) (6) (C) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a) (6) (C) that he was a person who had been "after entry" a member of, or affiliated with, the Communist Party. He urges that his entry, for the purposes of the Act, was the entry of 1945 and that if he was a Communist in 1937 and 1938, this was not "after entry". This raises the question as to what is meant by the word "entry" where, as here, the alien has entered the United States on a number of occasions over a long period of years. The word "entry" is defined in the Act itself to mean:

"Any coming of an alien into the United States, from a foreign port or place or from an outlying possession". 8 U.S.C. § 1101(13).

In United States ex rel. Volpe v. Smith, 1933, 289 U.S. 422, at page 425, 53 S.Ct. 665, at page 667, 77 L.Ed. 1298, the Supreme Court, in construing the word "entry" in the Immigration Act of 1917, 39 Stat. 874, said that it accepted the view that the word

"includes any coming of an alien from a foreign country into the United States whether such coming be the first or any subsequent one."

At that time, the word "entry" had not been defined in the Act. At the present time, the word is defined and it is defined in consonance with that previously held to be a proper definition by the Supreme Court.

The construction urged by petitioner would lead to absurd results. If only the last entry was an entry for purposes of deportability, it would mean that any alien who became a member of a deportable group at any time after his initial entry could secure absolution therefrom by dropping his membership and tempo- rarily leaving the United States and then returning to it. It cannot be concluded that any such ridiculous result is intended by Congress.

Furthermore, it should be noted that the petitioner in the instant case made only one basic entry as an immigrant for residence purposes—that is the entry in 1937. The petitioner's return in 1945 was as a returning resident alien who was resuming an unrelinquished domicile. If any entry in the present situation was a basic entry, it was that of 1937. If he was a member of the Communist Party after that date, he was such after his "entry".

■ The petitioner also urges that the record does not sustain, as a matter of law, that petitioner was a member of the Communist Party, or affiliated with that Party, in 1937 and 1938. A careful review of the record by me convinces me that this contention has no validity. The evidence is summarized in the decision of the Board of Immigration Appeals. The evidence properly justifies the conclusion reached by that Board. A further review by me of the evidence would add nothing.

■ It should furthermore be pointed out that petitioner remained "mute" throughout the entire deportation proceedings and refused to answer any questions of any nature whatsoever. When the writ came on before me, I gave the petitioner an opportunity to present any evidence that he might wish to have considered by me. He voluntarily took the stand and testified at length about his career and his places of residence. He testified that he is not now a Communist and that he has not been a member of the Communist Party since 1941. However, when he was asked, on cross-examination, whether at any time in his life he had been a member of, or affiliated with, the Communist Party, he refused to answer on the ground that an answer might tend to incriminate him. Petitioner was not compelled to testify at the hearing on the writ, but having voluntarily elected to testify, his re-

fusal to answer a significant question may certainly give rise to an inference. United States ex rel. Bilokumsky v. Tod, 1923, 263 U.S. 149, 153, 44 S.Ct. 54, 56, 68 L.Ed. 221:

"Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character."

Thus, even in a criminal case, a witness who voluntarily testifies in his own behalf waives his constitutional privilege against self-incrimination. Raffel v. United States, 1926, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; see Wigmore on Evidence, 3rd Ed., Vol. VIII, pp. 433–434.

On the entire record, there would seem to be no basis for vacating the warrant of deportation.

 This brings us to the next point raised in this proceeding, i. e., is petitioner entitled to be enlarged on bail, pending final judicial determination of the review of the deportation order? The issue on such an application is whether the Attorney General arbitrarily exercised his discretion by denying bail. United States ex rel. Potash v. District Director of Immigration and Naturalization, 2 Cir., 1948, 169 F.2d 747; Carlson v. Landon, 1951, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547. To determine whether the Attorney General arbitrarily exercised his discretion, a hearing must be held at which time there could be considered such factors as the probability of the alien being found deportable, the seriousness of the charge against him if proved, the danger to public safety of his presence in the community, and his availability for further proceedings.

In the instant case, petitioner was denied bail when he first was served with the warrant of deportation and before any hearings had been held. The District Court directed that the petitioner should be enlarged on bail, and this determination was affirmed by the Court of Appeals. United States ex rel. Belfrage v. Shaughnessy, D.C.S.D.N.Y.1953, 113 F.Supp. 56, 59, affirmed, 2 Cir., 1954, 212 F.2d 128.

In the opinion of the District Court, Judge Weinfeld pointed out that in petitioner's sworn amended traverse "Belfrage denies that he is or was a Communist" and that he swore that "In 1947, he had been investigated and interrogated by the FBI, and thereafter in the same year he was questioned before a Grand Jury in the United States District Court for this district for two days", and that in his sworn traverse, he stated that he had there answered " 'fully and at length all the questions concerning his activity—past and present—and his loyalty to this country, including questions relative to past and present membership in the Communist Party, which he then denied' ".

We are now faced with an entirely different situation. After lengthy and extensive hearings before the Immigration Service, it has been determined that petitioner was, in fact, a member of the Communist Party after his entry in the United States, and this finding has been sustained by the Board of Immigration Appeals and is found by this Court to be warranted by the evidence in the record. Therefore, the probability of petitioner's deportation has been established. But the question remains as to whether there is any danger to the community in enlarging him on bail, pending the complete judicial review of the deportation order. Petitioner contends not. At first I was inclined to agree with him and directed that a hearing be held upon the issue as to his right to bail. This hearing has convinced me that my first impression was wrong. At the hearing, petitioner voluntarily took the stand and offered himself as a witness on his own behalf.

On cross-examination, petitioner was asked whether, in his testimony before the Grand Jury, to which Judge Weinfeld had referred, he had categorically denied that he was in 1947 a member of the Communist Party or that at any time prior thereto he had been a member of the Communist Party. He de-

clined to answer the question on the ground that it might tend to incriminate him.

The petitioner was shown a document which purported to be a statement given to representatives of the FBI and which purported to have his signature on it. He was asked whether he recognized the document. The record shows that the following then occurred:

"A. I decline to answer on the same ground.

"The Court: On the ground that recognition of that would tend to incriminate you?

"The Witness: Yes, sir."

Petitioner admitted that in the proceeding before Judge Weinfeld, he had signed and sworn to a traverse concerning his interrogation before the Grand Jury. He was asked whether that sworn statement which had been submitted to Judge Weinfeld was true. He declined to answer on the same ground.

Petitioner declined to answer as to whether he had ever been a member of the Communist Party, and whether he ever used an assumed name, and as to whether a certain Communist Party membership card which was exhibited to him had, in fact, been issued to him.

We have, therefore, a situation where petitioner, in a successful effort to get bail in an earlier proceeding in this Court, made certain sworn statements which are now shown to be false. We have a situation where he is asked on the present proceeding whether certain other sworn statements made in the previous proceeding were true or false, and he refuses to answer on the ground that an answer might tend to incriminate him. How much credence can be given to such a witness?

Petitioner contends that he is not now a Communist and indicates that his enlargement on bail could not be a threat to the public safety. However, in view of his flexible concept in the past of the sanctity of an oath, I do not feel that this Court should, on his present assertions, overrule the determination of the Attorney General that if this man were enlarged on bail, he might be a threat to the safety of the community. He may be endeavoring to mislead the present Court, as he did so successfully in the past.

The testimony taken before me established that the petitioner is the proprietor and editor of a publication known as "The National Guardian" which was established by him in 1948 and which has a circulation of about 40,000. He was asked whether, in his editorial policy, he had defended the Communist cause and he replied: "Frequently. If I may put that a little more generally, we have defended the right of the Communist Party to function and exist like any other party." The petitioner admitted that during the Korean War, his paper published lists of American prisoners of war held by the Chinese, and that he got the list of these prisoners from a publication named "The China Monthly Review" which was published in China. There is no indication that if he were released on bail, he would not continue to give aid and assistance to the World Communist Movement.

The refusal of the Attorney General to grant bail can be overridden only where it is clearly shown that it was without a reasonable foundation. Where petitioners in a habeas corpus proceeding were shown to have been members of the Communist Party, and where the judgment of the Attorney General was that a petitioner "may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained." Carlson v. Landon, 1951, 342 U.S. 524, 544, 72 S.Ct. 525, 536, 96 L.Ed. 547.

The conduct of petitioner has been such that it cannot be said that the determination of the Attorney General was without a reasonable foundation, or that he had abused his discretion in denying the enlargement of the petitioner on bail.

The writ is denied. So ordered.