JOHANNES RASMUSSEN

v.

WILLIAM B. ROBINSON, JR.,

Director of Police, St. Croix, Virgin Islands, et al.

No. 9287

Circuit Court of Appeals

Third Circuit

Argued April 24, 1947

Decided September 16, 1947

*See, also, 163 F.2d 732*

GEORGE H. T. DUDLEY, of Charlotte Amalie, Virgin Islands, *for appellant*

CROXTON WILLIAMS, Assistant District Attorney, of Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before BIGGS, MARIS, and O'CONNELL, *Circuit Judges*

BIGGS, *Circuit Judge*

Stripping the appeal in the case at bar to its essential facts, the following appears. Rasmussen, the appellant, a Danish subject, first arrived at St. Thomas in the

United States Virgin Islands on July 22, 1932. From time to time prior to 1944 he left the Virgin Islands and returned thereto. During the years 1941, 1942, 1943 and 1944 he embezzled substantial amounts from two companies and on July 11, 1944, left the Virgin Islands on a small fishing vessel, the "Snow White," and arrived at St. Martin in the French West Indies. He was there detained on a warrant charging him with embezzlement and was returned to St. Thomas on the U.S.S. "Conqueror." On or about July 28, 1944, he was admitted as a "returning resident" and pleaded guilty to two charges of embezzlement[1] and was sentenced on January 16, 1945, to serve two concurrent sentences of four years each. In passing each sentence the District Court of the Virgin Islands recommended to the Attorney General that the appellant not be deported as a consequence of the convictions. See Section 19 of the Immigration Act of 1917 as amended, 8 U.S.C. § 155. On March 8 and on July 3, 1945, after he had been sentenced, Rasmussen admitted to the Immigration Authorities at St. Thomas, V. I., that he had committed crimes involving moral turpitude, viz., the embezzlements for which he had been sentenced. Just prior to Rasmussen's release from imprisonment at the Richmond Penitentiary at St. Croix, he was served with a warrant of deportation. He petitioned the District Court of the Virgin Islands for a writ of habeas corpus, asserting that the recommendations to the Judge of the District Court of the Virgin Islands to the Attorney General had been disregarded and that, for this reason, the warrant was null and void. After hearing the District Court discharged the writ, remitting Rasmussen to the custody of the immigration authorities for deportation. He has appealed.

[1] See Code [1921] of Laws for the Municipality of St. Thomas and St. John, Virgin Islands, Title IV, chapter 10, section 33, p. 327 [14 V.I.C. § 1089].

The pertinent provisions of the Immigration Act of 1917 as amended are set out in the footnote.[2] The appellant's contention is that the language of Section 19 providing for a recommendation to the Attorney General by the sentencing judge that the alien shall not be deported is binding on the Attorney General and prohibits his deportation. The respondents' position is that the recommendation provisions of Section 19 are not applicable.

 The statute presents difficulties of interpretation. Section 3 of the Act provides that an alien who has been convicted of or who admits the commission of a crime involving moral turpitude shall be excluded from admission to the United States. Rasmussen, however, was admitted as a "returning resident" for the purposes of his trial. This entry must be presumed to have been a legal

[2] As follows:

Sec. 3(e). "The following classes of aliens shall be excluded from admission into the United States: . . . persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; . . ." See 8 U.S.C. § 136(e).

Sec. 19. "At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this Act, or in violation of any other law of the United States; . . . except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; . . . any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; at any time within three years after entry, any alien . . . who enters without inspection, shall, upon the warrant of the Attorney General, be taken into custody and deported. . . . The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported in pursuance of this chapter; nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment." See 8 U.S.C. § 155.

488

one. Cf. Blumen v. Haff, 9 Cir., 78 F.2d 833. Section 19 states that any alien who was convicted or who admits the commission "prior to entry" of a crime involving moral turpitude shall be deported. If Section 3 was strictly followed no alien within the purview of Section 19 would be admitted. But the provisions of Section 19 were intended to provide means for the deportation of aliens who had obtained entry despite the provisions of Section 3.[3] In United States v. Smith, the "Volpe case," 289 U.S. 422, 425, 53 S. Ct. 665, 667, 77 L. Ed. 1298, it was held that ". . . the second coming of an alien from a foreign country into the United States is an entry within the usual acceptation of that word . . .". The decision of the Supreme Court in the Volpe case is susceptible to the inference that it makes no difference where the crime occurred if it was committed prior to entry into the United States. The crimes committed by Rasmussen prior to his return to the Virgin Islands were committed "prior to entry." Rasmussen is within the scope of Section 19 as an alien ". . . who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude . . . shall, upon the warrant of the Attorney General, be . . . deported."

We come now to the question of whether the recommendation proviso of Section 19 is applicable for Rasmussen's benefit. Its terms are set out in note 2 supra. It provides that the sentencing judge may recommend non-deportation of the alien convicted of a crime involving moral turpitude. The pertinent language is that "The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply . . . nor shall such deportation be made . . . if the . . . judge . . . shall . . . make a recommendation to

[3]Observe the words of Section 19, ". . . any alien who shall have entered or who shall be found in the United States in violation of this Act . . .".

the Attorney General, etc." Nothing in Section 19 expressly limits the operation of the recommendation proviso to sentences for crimes committed either before or after entry. If the section be construed literally therefore Rasmussen's sentences should be included in its purview. The Volpe decision also makes clear that his sentences fall within the scope of the recommendation proviso for in that case the Supreme Court construed the word "entry" as the equivalent of the phrase "any entry." But this portion of the statute provides that the recommendation shall be made to the "Attorney General." The "Attorney General" referred to is the Attorney General of the United States. The "recommendation" is mandatory upon him. United States v. Hughes, 3 Cir., 116 F.2d 613, 616, and note 16 cited to text. It follows that the judges who are to make the recommendation are to be judges of courts of the United States or of the States for Congress certainly did not intend to impose the mandate of a foreign judiciary on the Attorney General of the United States. This means that crimes committed prior to entry, not within the United States, are not within the proviso, but crimes committed by an alien, in the United States, prior to entry, are within the proviso. We so stated in the Hughes case, supra.[4]

We can perceive no lack of logic in this view. Congress intended to confer and did confer upon our "local" judges the power to recommend whether or not an alien should be deported for a crime involving moral turpitude committed within the United States. There is no reason why Rasmussen should not be given the benefit of the recommendations in his favor because his crimes were committed "prior to entry."

[4]We said, 3 Cir., 116 F.2d 617: "So to hold the statute pertinent would cut it down to the rare case . . . where the alien defendant leaves and then reenters the country . . . for the purpose of standing trial for, or pleading guilty to, a crime involving moral turpitude locally committed."

It must be conceded that this conclusion is contrary to dicta in the Hughes case, supra, 116 F.2d at page 615, in which we held only that Santarelli was deportable "as an alien 'who has remained longer than permitted under this Act'," citing Masahiko Inouye v. Carr, 9 Cir., 89 F.2d 447, but we went on to state certain other conclusions which tend to support the ruling of the court below in the case at bar. See D.C., 68 F. Supp. 930, 932.

■ A final point requires discussion. The respondents rely on Rasmussen's admissions that he committed crimes involving moral turpitude. They point to the language of Section 19 hereinbefore frequently quoted: "any alien . . . who admits the commission, prior to entry, of a . . . crime . . . involving moral turpitude," and take the position that since Rasmussen admitted the commission of the embezzlements, he is deportable, the recommendation proviso of Section 19 being applicable only to one who has been found guilty of such a crime in a court of law and who has made no admission. It is idle to speculate as to what may have been the intention of Congress respecting the status of aliens who admitted commission of crimes involving moral turpitude in contradistinction to those who were tried and found guilty for Rasmussen not only admitted the commission of crimes of embezzlement but also was sentenced therefor and received the benefit of recommendations from the judge. What occurred, as we have demonstrated, was within the purview of the proviso of Section 19. Rasmussen therefore is entitled to the benefit of the judge's recommendations that he be not deported.

The judgment of the court below will be reversed and the cause will be remanded with the direction to discharge the petitioner from custody.