**Girma K. MARIAM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11545.**

District of Columbia Court of Appeals.

Argued Dec. 7, 1977.

Decided April 28, 1978.

Samuel J. Lowe and Jan M. Pederson, Washington, D. C., for appellant.

Richard H. Saltsman, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Regina C. McGranery, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before HARRIS, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

On September 6, 1976, at the conclusion of a nonjury trial, the court found appellant guilty of transmitting a "threat to injure the person of" complainant, Ghodratollah Mohaghegh, with the intent to extort money. D.C.Code 1973, § 22–2306(2). On October 27, 1976, the court suspended "imposition of sentence" and placed appellant on three-years' probation. Appellant has asserted two errors: (1) the indictment's omission of an allegedly essential element of the crime, namely that the threat to injure complainant must have been communicated to "another person" who is not himself the intended victim; and (2) the sentencing judge improperly failed to exercise jurisdiction over appellant's motion for a judicial recommendation against deportation. Finding no error, we affirm.

## I.

Mr. Mohaghegh, an Iranian national in the United States as a student, testified that he first met appellant in a neighborhood laundromat on Saturday, September 27, 1975. After further conversations at Mr. Mohaghegh's apartment, during the course of which appellant learned that his host had deposited his savings at the Riggs National Bank, appellant promised to return the following morning to help Mr. Mohaghegh obtain a Social Security card and switch his funds to the American Security and Trust Company, where appellant had said a higher interest rate was available.

Mr. Mohaghegh further testified that when he left his apartment on Monday morning, intending to walk to his English language class, he encountered appellant, who persuaded him to return home to pick up his savings passbook and then drive with appellant to the Riggs branch at 1875 Connecticut Avenue, N.W. At the bank, Mr. Mohaghegh closed his account and received a bank check for the $3,000 balance. He explained that although appellant had told him that American Security and Trust would accept only cash, he took the check as a precautionary measure and told appellant that the bank did not have sufficient cash on hand to meet his withdrawal. Insisting that Mr. Mohaghegh cash the check, appellant drove him first to the Watergate branch of the Riggs Bank, then back to the Connecticut Avenue branch, and finally to the main Riggs office at 15th Street and Pennsylvania Avenue, N.W. Mr. Mohaghegh testified that during this period of driving from bank to bank, appellant twice told him that he had a knife and would kill him if he did not cash the check. Appellant was arrested at the main Riggs office after the general manager, whose suspicions were aroused by a brief conversation with Mr. Mohaghegh and appellant, alerted the police.

For the defense, appellant testified that his father had lost his position with the Ethiopian government following the revolution in that country, and that complainant accordingly had agreed to lend him $120 to pay his rent. Appellant testified that the expedition to the various branches of the Riggs National Bank was directed exclusively toward helping Mr. Mohaghegh obtain the cash to make the small loan. Although he admitted to exasperation when Mr. Mohaghegh appeared to be reneging on his promise to make the loan, appellant denied having made any threat of physical harm.

## II.

■ The first issue is whether D.C.Code 1973, § 22–2306(2), in prohibiting "any threat to injure the person *of another*" (emphasis added), is intended to prohibit threats made *directly* to the intended victim (*e. g.*, appellant's threat to Mr. Mohaghegh), or is intended—as appellant contends—to prohibit only threats communicated to a third party to injure "another" person.[1] In

---

1. D.C.Code 1973, § 22–2306, provides:
   Whoever with intent to extort from any person, firm, association, or corporation, any money or other thing of value: (1) transmits within the District of Columbia any communication containing any demand or request for ransom or reward for the release of any kidnapped person, shall be fined not more

support of his construction, appellant points out that § 22–2306(2) covers not only threats "to injure the person *of another*" but also, in contrast, threats "to kidnap *any* person" (emphasis added), and that a companion section, § 22–2306(3), expressly prohibits threats against property or reputation "of the *recipient* of the communication *or of another . . .*" (emphasis added). *See* note 1, *supra.* Appellant argues that the authors of § 22–2306 clearly had in mind two classes of individuals—those who are the direct "recipients" of threats and "another group" who are the objects of the threats. It follows, according to appellant, that the plain words of the statute limit criminal sanctions for threats to "injure the person" to indirect threats against this second class of individuals (thereby excluding appellant), whereas sanctions for threats to kidnap, or against property or reputation, may be applied when the threat is directly communicated to the intended victim.[2]

Neither appellant nor the government has cited any applicable decision on this section of the D.C.Code.[3] There are, however, a number of reported cases, involving communications directly to the party threatened, in which the federal courts have upheld convictions for violations of 18 U.S.C. § 875 (1970), the federal analogue of D.C.Code 1973, § 22–2306. *Rathbun v. United States,* 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); *United States v. Smith,* 433 F.2d 1266 (5th Cir. 1970) *cert. denied,* 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328 (1971); *United States v. Dutsch,* 357 F.2d 331 (4th Cir. 1966); *Seeber v. United States,* 329 F.2d 572 (9th Cir. 1964); *Carbo v. United States,* 314 F.2d 718 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498, *rehearing denied,* 377 U.S. 1010, 84 S.Ct. 1902, 12 L.Ed.2d 1058 (1964); *United States v. Feudale,* 271 F.Supp. 115 (D.Conn.1967) (acquittal on other grounds); *United States v. Pennell,* 144 F.Supp. 317 (N.D.Cal.1956).[4] Although the pattern of

---

than $5,000 or imprisoned not more than twenty years, or both; (2) transmits within the District of Columbia any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or (3) transmits within the District of Columbia any communication containing any threat to injure the property or reputation of the recipient of the communication or of another or the reputation of a deceased person or any threat to accuse the recipient of the communication or any other person of a crime, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. Appellant's construction of § 22–2306 would leave threats communicated directly to the intended victim chargeable only under the misdemeanor statute, D.C.Code 1973, § 22–507, which provides:

Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than six months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding one year.

Of course, the fact that certain conduct may fall within the scope of § 22–507 does not negate the possibility that such conduct also may constitute a violation of § 22–2306. *See United States v. Young,* D.C.App., 376 A.2d 809 (1977).

3. A recent decision of our court, *United States v. Young, supra,* held that convictions under D.C.Code 1973, § 22–2307, which tracks 18 U.S.C. § 875 (1970) in proscribing threats to harm the "person of another," did not require a showing of a specific intent to extort. *Young did not reveal whether the threats involved* were received directly by the party whose "person" was being threatened, and thus did not deal with that question.

4. 18 U.S.C. § 875 (1970) provides as follows (closely tracking D.C.Code 1973, § 22–2306 at note 1, *supra* ):

(a) Whoever transmits in interstate commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(c) Whoever transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

affirming such convictions under § 875 does not in itself defeat appellant's objection to applying the District of Columbia extortion statute to his case, our review of relevant legislative history (elaborated below in note 5) convinces us that the trial court was correct in holding that the language of § 22–2306(2) is sufficiently broad to encompass threats "to injure the person of another" communicated directly to the intended victim.[5] We find no error here.

## III.

■ In a supplemental brief, appellant claims that the sentencing judge erred in failing to exercise jurisdiction over appellant's motion for a judicial recommendation against deportation.

Appellant points out, as the basis for his motion, that 8 U.S.C. § 1251(a)(4) (1970) requires the deportation of any alien who "is convicted of a crime involving moral turpitude committed *within five years* after entry and either *sentenced to confinement* or confined therefor in a prison or correc-

tive institution, *for a year or more*" (emphasis added). Further, 8 U.S.C. § 1251(b)(2) (1970) provides for inapplicability of this deportation requirement "if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation . . that such alien not be deported . . . .''

It appears, however, that these provisions are irrelevant to appellant Mariam's status. Appellant's brief states that he has continuously resided in the United States since his admission as a nonimmigrant student on September 19, 1970. The events constituting the crime with which he was charged did not occur until September 29, 1975, more than five years after the date of his entry. Moreover, in view of the fact that the court suspended the "imposition of sentence" and placed appellant on probation, it would appear that appellant is also outside the scope of § 1251(a)(4) on the ground that he was not "sentenced to confinement . . for a year or more." For these reasons,

(d) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both.

5. D.C.Code 1973, § 22–2306, note 1, *supra*, tracks the language of subsections (a), (b), and (d) of 18 U.S.C. § 875 (1970), note 4, *supra*. This federal statute was originally adopted by the Act of May 18, 1934 (48 Stat. 781) and later codified into 18 U.S.C. § 408d with the express intention of extending to victims of extortionate threats over the telephone, telegraph, or radio the protection which already had been afforded by the Act of July 8, 1932 (47 Stat. 649) against extortion through the mails. The "person of another" language upon which appellant relies first appeared in 1939, when all the federal extortion statutes were amended by the Act of May 15, 1939 (53 Stat. 742–744) to cover communication of threats through the postal service or interstate commerce *without* an apparent intent to extort money or something else of value. (In 1948, these provisions were recodified in 18 U.S.C. §§ 875–77.) The

legislative history of the 1939 amendments indicates no intent whatsoever to narrow the scope of existing provisions by introducing a new distinction between threats communicated directly to the intended victim and threats communicated to a third party. *See, e. g.*, H.R.Rep. No. 102, 76th Cong., 1st Sess. (1939); S.Rep. No. 349, 76th Cong., 1st Sess. (1939); *Threatening Communications: Hearings on H.R. 3230 Before the Committee on the Post Office and Post Roads*, 76th Cong., 1st Sess. (1939).

In outlining his reasons for introducing what is now § 22–2306 as an amendment to the bill that became Title X of the *Omnibus Crime Control and Safe Streets Act of 1968*, Pub.L. No. 90–351, 82 Stat. 238 (June 19, 1968), Senator Tydings, the Chairman of the Senate District Committee's Subcommittee on Business and Commerce, stated:

Specifically, section 1001 [now § 22–2306] prohibits three kinds of action, when they are perpetrated "with intent to extort from any person, firm, association or corporation, any money or thing of value:" First, any demand for ransom for a kidnapped person; second, *any* threat to injure *any* person; and third, any threat to injure the property or reputation of any person. [114 Cong.Rec. 14778 (1968) (emphasis added).]

appellant has no basis for challenging the sentencing judge's actions.[6]

■ In any event, we find no support for appellant's contention that the sentencing judge failed to exercise jurisdiction over the request for a recommendation against deportation. After listening to argument by counsel for appellant and for the government, the judge decided to suspend the imposition of sentence, thereby removing whatever immediate threat of deportation appellant may have faced. At the same time he denied appellant's motion for a recommendation against deportation:

> The Court is of the view that the immigration authorities are in a much better position to make such a determination than is the Court, in the instance of an alien who has been in this country a considerable period of time, and has been subject to their observations and information as to his activities, and I will not subject myself to that.

Appellant characterizes this ruling as a "disinclination to decide" the motion—as a decision, rather, to decline jurisdiction over it. We disagree. We believe the judge's statement evidences that he properly took jurisdiction over the motion for a recommendation against deportation and denied it. We therefore deny appellant's request for a remand for purposes of resentencing and reconsideration of the motion for judicial recommendation against deportation.

*Affirmed.*

**6.** Appellant asserts that a judicial recommendation against deportation, pursuant to 8 U.S.C. § 1251(b)(2), would have two other salutary effects: (A) elimination of the possibility of "exclusion" if he were ever to leave and attempt to reenter the United States, and (B) prevention of denial of an application to receive permanent-resident status. Neither the exclusion statute, 8 U.S.C. § 1182 (1970), nor the statutes governing adjustment of status, 8 U.S.C. § 1255–1260, make any provision (analogous to the deportation statute) for a judicial recommendation against exclusion or denial of a requested change in status. This is not to say that the immigration authorities cannot or do not rely on a judicial recommendation under § 1251(b)(2) as a factor in administering these other statutes; we offer no views on that ques-

tion. It is to say, however, that appellant has shown no legal connection between a judicial recommendation under § 1251(b)(2) and possible benefits under these other statutes that would justify a remand here.

*Rasmussen v. Robinson,* 163 F.2d 732 (3d Cir. 1947), relied upon by appellant, had nothing to do with the effect of judicial recommendation upon the statutes governing exclusion or adjustment of status. *Rasmussen* held, on the basis of the statutory predecessor of § 1251(b)(2), that a judicial recommendation against deportation of a convicted embezzler was binding on the Attorney General in the case of a Danish subject who—as a U.S. resident—had returned for trial. *Rasmussen* did not construe an alien's rights under the statutory predecessor of § 1182 or §§ 1255–60.